978 F.2d 679
 Roland SPRUILL, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent.
 No. 91-3245.
 United States Court of Appeals,
Federal Circuit.
 Oct. 22, 1992.
Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Dec. 21, 1992.
 
 Charles A. Hobbie, Deputy Gen. Counsel, American Federation of Government Employees, AFL-CIO, Washington, D.C., argued, for petitioner. With him on the brief, was Mark D. Roth, Gen. Counsel. Also on the brief, was Daniel Minahan, Minahan & Shapiro, P.C., Lakewood, Colo. Of counsel was Alexia McCashill.
 David C. Kane, Asst. Gen. Counsel, Merit Systems Protection Bd., Washington, D.C., argued, for respondent. With him on the brief, were Mary L. Jennings, Acting Gen. Counsel and Rita S. Arendal, Atty. Deborah Bynum, Dept. of Justice, Washington, D.C., for respondent. Of counsel were Martha H. DeGraff and David M. Cohen, Dept. of Justice, Washington, D.C.
 Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.
 PLAGER, Circuit Judge.
 
 
 1
 Roland Spruill (Spruill), an employee of the Department of Veterans Affairs (DVA), was given a three-day suspension by the agency. He petitioned the Merit Systems Protection Board (MSPB or Board) for review of his suspension, which he alleged was taken by the agency in retaliation for his filing of a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). The Administrative Judge (AJ) dismissed Spruill's petition for lack of jurisdiction, holding that the filing of such an EEOC complaint was not within the ambit of 5 U.S.C. § 2302(b)(8).[1] (Docket No. DE122191W0104, January 30, 1991). Since Spruill did not file a petition for review with the MSPB, the initial decision of the AJ became the final decision of the MSPB. 5 C.F.R. § 1201.113 (1991).
 
 
 2
 Section 2302(b)(8) describes certain activities which have come to be known as 'whistleblowing,' and prohibits adverse personnel actions against federal government employees in reprisal[2] for such activities. Should an employee believe such a prohibited reprisal action has been taken, Congress has provided a direct appeal route to the MSPB, called the Individual Right of Action (IRA), under § 1221. Absent the benefit of that special provision for whistleblowers, Spruill would have no right to MSPB review of this particular agency sanction. Spruill appeals the MSPB's determination that he does not have the benefit of the IRA.
 
 
 3
 During the course of this appeal, the DVA, Spruill's employing agency, filed a motion requesting that the caption in this case should be reformed to designate the DVA, rather than the MSPB, as the party respondent. This motion has consequences considerably beyond the proper titling of the court papers.
 
 
 4
 Spruill's appeal thus raises two questions of some significance, questions not previously addressed by this court. For the reasons given, we affirm the Board's decision regarding jurisdiction, and deny the motion of the DVA.
 
 I. BACKGROUND
 A. Factual background
 
 5
 Spruill is employed by the Veterans Affairs Medical Center in Phoenix, Arizona. On November 7, 1989, he filed a complaint with the EEOC alleging discriminatory treatment, based on his supervisor's decision to shift Spruill's starting and quitting times back one half hour. Spruill alleged in his complaint that this seemingly innocuous alteration was discrimination based upon his handicapping condition because it would interfere with his physical therapy--he is a disabled veteran. Furthermore, Spruill alleged discriminatory intent based upon his race--he is black. The merits of these allegations are not at issue here.
 
 
 6
 Almost a year after the EEOC complaint was filed, the DVA on August 28, 1990, proposed a five-day suspension, and on September 18, 1990, suspended Spruill for three days without pay. The DVA stated that the sanction was for Spruill's abuse of sick leave. Spruill, alleging that the suspension was in reprisal for his filing of the EEOC complaint, sought help from the Office of Special Counsel (OSC) pursuant to § 1214.
 
 
 7
 The OSC is the office specifically charged with investigating allegations of prohibited personnel practices within the Federal Government. That office in a letter to Spruill declined to consider his case, however, referring him instead to the EEOC process:
 
 
 8
 Your allegation of discrimination and reprisal for filing an EEOC complaint is of a prohibited personnel practice within the investigative jurisdiction of the Office of Special Counsel. 5 U.S.C. §§ 2302(b)(1) and (b)(9). However, it was not intended that this office duplicate or bypass the procedures established in the agencies and the Equal Employment Opportunity Commission for resolving such discrimination complaints. Therefore it is the general policy of the Special Counsel not to take action on such allegations of discrimination; they are more appropriately resolved through the EEOC process. 5 C.F.R. § 1810.1. (Emphasis added).
 
 
 9
 Spruill then petitioned the MSPB for review of his three-day suspension pursuant to the provisions of § 1221, the Individual Right of Action (IRA) provision. Ordinarily a three-day suspension would not be appealable to the MSPB. Section 7503. Under the IRA, however, such a personnel action, if taken against an employee "as a result of a prohibited personnel practice described in section 2302(b)(8)," entitles the employee to seek corrective action from the MSPB. 5 U.S.C. § 1221.
 
 
 10
 Spruill argued before the MSPB that filing an EEOC complaint constituted protected whistleblowing activity under § 2302(b)(8), citing Williams v. Department of Defense (Williams I), 45 M.S.P.R. 146 (1990), which had so held, and that the MSPB thus had jurisdiction under the IRA to hear and decide his appeal from the agency's sanction. However, while Spruill's appeal was still before the Administrative Judge (AJ), the MSPB reversed its position in Williams I, and adopted the contrary position. Williams v. Department of Defense (Williams II), 46 M.S.P.R. 549 (1991). The AJ accordingly dismissed Spruill's appeal on January 30, 1991, citing Williams II.
 
 B. Legal Background
 
 11
 The CSRA, enacted in 1978, set up an extensive framework of merit principles and personnel procedures, designed in large part to "give agencies greater ability and flexibility to remove or to discipline employees who engage in misconduct ... or whose work performance is unacceptable." Lisiecki v. Merit Systems Protection Bd., 769 F.2d 1558, 1563 (Fed.Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986). At the same time, the Act detailed a host of "prohibited personnel practices," actions which are prohibited to be taken against an employee. These are spelled out in a number of paragraphs in subsection 2302(b). See 5 U.S.C. § 2302(b)(1)-(11). Paragraph (b)(8) provides protection against agency reprisal for what is known as whistleblowing.[3]
 
 
 12
 In 1989, after extensive hearings regarding the effectiveness of the CSRA provisions for protection of whistleblowers,[4] Congress enacted the Whistleblower Protection Act of 1989 (WPA). The WPA substantially changed the role of the OSC, revised the substantive provisions of the whistleblower defense, and created a new route in whistleblowing cases for employees to take in appealing agency discipline--the Individual Right of Action (IRA). Through the IRA, employees previously excluded from MSPB review gained access both to the MSPB and the augmented enforcement powers provided through the IRA.[5]
 
 
 13
 But the benefits of the IRA are only available to Spruill if the prohibited act is one described in § 2302(b)(8). Thus, if Spruill is to have MSPB review of his three-day suspension, he must demonstrate, contrary to the MSPB position in Williams II, that the activity which triggered the alleged reprisal falls within the statutory definition of the prohibited acts described in § 2302(b)(8).
 
 II. DISCUSSION
 A. The Caption Issue
 
 14
 We turn first to the DVA motion to reform the caption, that is, to designate the Department of Veterans Affairs as the proper respondent before this court. The designation of the proper respondent is not simply a question of getting the name of the case right. It determines which agency and whose lawyers--and therefore whose policies and practices--are represented in the appeal. The issue is not a new one under the CSRA, although this case raises it in a new context, that of a claim for relief under the IRA provisions. Because in this context the question is one of first impression, we examine it at some length.
 
 1.
 
 15
 Central to the dispute are two different provisions of Title 5, each of which purports to authorize judicial review of MSPB actions. One of these provisions is found in the original CSRA. Section 7703 is entitled "Judicial review of decisions of the Merit Systems Protection Board." Subsection 7703(a)(1) states the employee's general right of judicial review:
 
 
 16
 Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.[6]
 
 
 17
 The next subsection, 7703(a)(2), then indicates the proper respondent for the appeal pursuant to § 7703(a)(1). Prior to its amendment in 1989, 7703(a)(2) read:
 
 
 18
 The Board shall be named as respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision issued by the Board under section 7701. In review of a final order or decision issued under section 7701, the agency responsible for taking the action appealed to the Board shall be the named respondent.
 
 
 19
 (The reference to section 7701 is to the general provision for MSPB review of agency personnel actions.)
 
 
 20
 While seemingly straightforward, the application of this language to particular cases was subject over the years to some dispute. Prior to 1988, § 7703(a)(2) had been understood to mean that the proper respondent in this court ordinarily was not the Board itself, but the agency responsible for taking the action which was the subject of the appeal. Thus, in the usual case this meant that the employing agency was the respondent, since it was the agency's personnel action that triggered the decision on the merits. However, if during the course of the MSPB proceedings the final decision or order turned on the MSPB's procedures or jurisdiction, on an appeal to this court the MSPB was held to be the proper respondent since the relevant "agency action" was that of the MSPB. See Hopkins v. Merit Systems Protection Bd., 725 F.2d 1368, 1372 (Fed.Cir.1984); Peterson v. Department of Energy, 737 F.2d 1021, 1022 (Fed.Cir.1984), cert. denied 469 U.S. 1189, 105 S.Ct. 960, 83 L.Ed.2d 966 (1985); cf. Tiffany v. Department of Navy, 795 F.2d 67, 69 (Fed.Cir.1986).
 
 
 21
 In 1988 the Federal Circuit, in Hagmeyer v. Department of Treasury, 852 F.2d 531 (Fed.Cir.1988), sitting in banc, overturned the Hopkins line of cases, and ruled that only the employing agency should be the respondent on review of all decisions rendered under § 7701. Id. at 539. This was said to be dictated by the plain meaning and legislative history of the statute. Id. at 539-40.
 
 
 22
 However, the effect of this ruling was promptly overturned by Congress in a 1989 amendment to § 7703(a)(2). Congress amended the subsection to read:
 
 
 23
 The Board shall be named as respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits of the underlying personnel action, or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.
 
 
 24
 (The newly enacted language is emphasized).
 
 
 25
 In Amin v. Merit Systems Protection Bd., 951 F.2d 1247 (Fed.Cir.1991), the court was called upon to apply the amended § 7703(a)(2). Two petitioners (whose cases were consolidated) appealed their individual removals to the MSPB. When the petitions for review were filed in this court, the Clerk named the Department of Agriculture and the U.S. Postal Service, the respective employing agencies, as the respondents. By letter to the Clerk, the MSPB requested the cases be recaptioned to designate the MSPB as the respondent in each case, citing § 7703(a)(2). The Clerk did so. The agencies then moved the court to reform the caption to reflect the employing agency as the respondent in each appeal.
 
 
 26
 Judge Cowen, writing for the court, engaged in a thorough and careful analysis of § 7703(a)(2) and its troubled history. The court concluded that there was no question that the 1989 amendment was in response to the Hagmeyer decision, and the court had no difficulty in understanding from the amendment and its legislative history what Congress had in mind. Amin, 951 F.2d at 1251. The result, said the court, was essentially to reinstate, with a minor exception, the pre-Hagmeyer rule of Hopkins.[7] "Congress intended that the Board shall be the respondent in all appeals involving its jurisdiction or its rulings on procedural questions, but that in appeals involving underlying personnel actions and attorney fees, the employing agencies should be the respondents." Id.
 
 
 27
 With regard to a case in which the appeal to this court involved both the merits and the validity of MSPB procedures, the Amin court, citing Hopkins, noted that "this court has followed the practice of naming the employing agency as the respondent in cases 'involving issues both on the merits of an agency's action and on the MSPB procedures....' " 951 F.2d at 1252. See, e.g., Howell v. Merit Systems Protection Bd., 785 F.2d 282, 285 (Fed.Cir.1986). The Amin court concluded, "[t]herefore, we hold that in cases where, as in this case, the appeal from the Board's decision presents mixed questions of procedure and the merits of an agency action, the employing agency is the proper respondent." 951 F.2d at 1252.
 
 
 28
 In cases controlled by § 7703(a)(2), then, Amin provides the necessary guidelines for determining who is the proper respondent: if only MSPB procedure or jurisdiction is involved, it is the Board; when the underlying merits are involved, it is the employing agency; when both are involved, it is the employing agency.
 
 2.
 
 29
 At the beginning of this discussion we noted that there were two statutory provisions in Title 5 central to this dispute. One is § 7703 and its subsections, which have just been discussed. The other is § 1221(h)(1), added in 1989 as part of the IRA. It is the presence of this second provision that takes this case out of the Amin context, and requires further consideration of the question of determining the proper respondent. Subsection 1221(h), paragraph (1), parrots § 7703(a)(1), the general provision of the CSRA providing for judicial review of MSPB decisions:
 
 
 30
 An employee, former employee, or applicant for employment adversely affected or aggrieved by a final order or decision of the Board under this section may obtain judicial review of the order or decision.
 
 
 31
 Paragraph (2) of subsection (h) states that the review "shall be filed with such court and within such time as provided for under section 7703(b);" § 7703(b) specifies, with one exception not relevant here, that review is in the Federal Circuit, and sets a 30-day filing date.
 
 
 32
 The DVA argument is premised basically on the proposition that this case comes to us from the MSPB under the special provisions of the IRA, and not under the general review authority of § 7703(a)(1). The DVA argues that, since this case arises under § 1221 with its own independent authority for review in the Federal Circuit provided by § 1221(h), the provisions for designating the proper respondent set out in § 7703(a)(2) are not applicable; they are applicable only to cases appealed under the authority of § 7703(a)(1). Thus, says the DVA, we can decide the correct rule for determining who is the proper respondent free of the strictures of § 7703(a)(2).
 
 
 33
 The MSPB, on the other hand, argues that § 7703(a)(1) is the basis for all appeals of MSPB decisions, and that the duplicative language of § 1221(h) providing for review in the Federal Circuit is mere surplusage--cautionary duplication of the pre-existing review authority of § 7703(a)(1). Since, argues the MSPB, Congress had before it at the same time both the amendment to § 7703(a)(2) which overturned the Hagmeyer rule and the new provisions of the IRA, Congress would have stated in the IRA a different rule for respondents if it intended one.
 
 3.
 
 34
 We need not decide which of these theories of appellate review is the correct one, that is whether, for purposes of determining the proper respondent, appeals under the IRA come to this court under authority of § 1221(h)(1) or under authority of § 7703(a)(1). Clearly, if the appeal is authorized under § 7703(a)(1) the rules for determining the proper respondent are governed by § 7703(a)(2), as explicated in Amin.
 
 
 35
 If, on the other hand, the case comes here under the authority of § 1221(h) of the IRA, there is no provision in that section of the statute comparable to § 7703(a)(2). In other words, in absence of Congressional instruction, the DVA is correct that this court is left to determine as a matter of first impression what should be the governing rule for designating the respondent. Given this, says the DVA, the correct rule is to name the employing agency. As a matter of policy, in the DVA's view, the MSPB should be kept in its role of neutral adjudicator and not advocate, whatever the issue is on appeal to this court.
 
 
 36
 We do not agree with the DVA's view of the matter. Even if we were to consider that the appeal came to us under § 1221(h) in isolation from § 7703(a)(1), we have no difficulty in following the lead of the Amin court in applying the principle of Hopkins. Admittedly that rule was announced as an interpretation of § 7703(a)(2), which subsection does address the question of who should be the respondent. The IRA in § 1221 does not expressly address the question at all. However, there are good reasons for applying the Hopkins/ Amin rule nevertheless.
 
 
 37
 The question of what are the controlling criteria for determining the proper party respondent is the same question whether the appeal comes to us under the authority of § 7703 or § 1221. Congress, when faced with the rule of Hagmeyer as the controlling criterion for appeals under the general authority of § 7703(a)(1), promptly reinstated the Hopkins rule. The same arguments in favor of the Hagmeyer rule made here by the DVA were presented at the Congressional hearings on the issue, and were rejected by Congress.[8] By applying the Hopkins rule here as well, we give full credence to the expressed will of Congress and maintain a consistency of approach regardless of the underlying source of appellate jurisdiction. The language of the two acts supports this, since the grant of jurisdiction language in the one is virtually identical with the other.
 
 
 38
 Furthermore, application of the Hopkins rule to IRA appeals produces a functionally sensible process. It gives authority to shape the litigation to the agency most affected by the outcome. In most cases, that will be the employing agency. Identification of the proper respondent will be obvious.
 
 
 39
 It is true that a rigid rule such as that invoked in Hagmeyer might be easier to administer in that it would leave no room for question. But such rigidity may have greater risk of causing problems than the more functional rule of Hopkins. The benefit of having in the system some discretion to ensure that the agency with the primary interest in the particular outcome is represented outweighs the possible costs of occasional dispute resolution when the agencies concerned cannot agree on where that primary interest lies.
 
 
 40
 In short, then, it does not matter under which of these theories of appellate jurisdiction an appeal reaches this court, the result will be the same. If the issue on appeal is solely one of the procedure or jurisdiction of the MSPB, then the proper respondent is the MSPB. If the issue is solely the merits of the underlying agency action, the agency is the proper respondent. If the case raises a mixture of these issues, i.e., if the merits of the agency action are reached by the MSPB, and at the same time a matter of important MSPB procedure or jurisdiction is involved, Amin teaches that the employing agency is the proper respondent. In such a case, the MSPB need not be unrepresented since it may request intervenor status, or as was done in Hagmeyer in absence of a motion to intervene, be given status as amicus curiae.[9]
 
 4.
 
 41
 Before closing this part of the case, it is important to clarify what is meant by the phrase "the procedure or jurisdiction" of the MSPB as the governing criteria for designating the proper party respondent. The term "procedure" is generally well-understood. It is the meaning of the term "jurisdiction" that may cause misunderstanding.
 
 
 42
 "Jurisdiction" is a term that is one of the most slippery in the legal lexicon. It takes on different connotations depending upon the context. When we speak here of an issue involving the "jurisdiction" of the MSPB, we are referring to the power of the MSPB to hear and decide a case--subject matter jurisdiction. See, e.g., Stokes v. Federal Aviation Admin., 761 F.2d 682, 685 (Fed.Cir.1985) ("Jurisdiction means the right or power of a tribunal to act.").
 
 
 43
 Sometimes the question of subject matter jurisdiction gets confused with the question of entitlement to relief, that is, whether a cause of action has been stated in the complaint, or later proved. For purposes of this discussion, precision requires that the distinction between these ideas be clearly drawn. In response to plaintiff's complaint, defendant may argue that the plaintiff's chosen forum lacks jurisdiction over the subject matter. (This may be raised, for example, by motion under Fed.R.Civ.Proc. 12(b)(1)). A decision by the forum that the facts as alleged do not fall within its subject matter jurisdiction is properly characterized as a dismissal for want of jurisdiction.
 
 
 44
 Defendant may also argue that the complaint's factual allegations fail to state a claim upon which relief can be granted, and again this may be raised by motion. Fed.R.Civ.Proc. 12(b)(6). Assuming that jurisdiction has not been challenged, or if challenged, jurisdiction has been found to exist on the basis of well-pleaded allegations in the complaint, a decision by the forum that the complaint fails to state a claim upon which relief can be granted is a decision on the merits of the pleaded cause. By like token, if plaintiff's later proofs fail with regard to an essential factual allegation, a decision against the plaintiff is a decision on the merits.
 
 
 45
 Confusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction. While the practical result of a dismissal for want of jurisdiction may in some cases be the same as a dismissal for failure to state a claim, the legal consequences can be substantially different.[10]
 
 
 46
 This important distinction between lack of jurisdictional power and the failure to state or prove a claim for relief has been drawn in a number of cases. In Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), Justice Jackson, writing for the Court, stated:
 
 
 47
 As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.... Petitioner asserted a cause of action under the Power Act. To determine whether that claim is well founded, the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has.
 
 
 48
 Id. at 249. The Court quoted from Justice Holmes: "[I]f the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad." Id. (quoting from The Fair v. Kohler Die Co., 228 U.S. 22, 25, 33 S.Ct. 410, 412, 57 L.Ed. 716 (1913)). The Court concluded by saying:
 
 
 49
 We think there was power in the District Court to decide whether the claims so grounded constitute a cause of action maintainable in federal court and, if so, whether it is sustained on the facts. We think a direction [by the Eighth Circuit Court of Appeals] to dismiss for want of jurisdiction was error and that it should not stand as a precedent.
 
 
 50
 Id. Accord Amgen, Inc. v. Int'l Trade Comm'n, 902 F.2d 1532, 1536, 14 USPQ2d 1734, 1738 (Fed.Cir.1990), Lackhouse v. Merit Systems Protection Bd., 773 F.2d 313, 316 (Fed.Cir.1985), cert. denied, 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 580 (1986). See also Ralston Steel Corp. v. United States, 169 Ct.Cl. 119, 340 F.2d 663 (Ct.Cl.), cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).
 
 
 51
 In the case of Do-Well Machine Shop, Inc. v. United States, 870 F.2d 637, 639-40 (Fed.Cir.1989), the issue was whether a successful affirmative defense of a time bar, raised by the Government against a claim for money due under a contract, went to the jurisdiction of the forum, or was a question of failure to state a claim for which relief could be granted. This court held it was not a matter of jurisdiction, saying:
 
 
 52
 The distinction between lack of jurisdiction and failure to state a claim upon which relief can be granted, is an important one: "[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover...." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).
 
 
 53
 To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted. The forum had jurisdiction to hear the matter in the first instance--that is, subject-matter jurisdiction existed--as long as the petitioner asserted nonfrivolous claims. As was said in Ralston Steel, "[w]here an Act of Congress ... or an executive regulation ... arguably confers such rights [to relief] upon the claimant, the court will assume jurisdiction and decide his case on the merits, even though the defendant may ultimately prevail." 340 F.2d at 667-68. Cf. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (under the "well-pleaded complaint rule," whether a district court has federal-question jurisdiction over a claim "must be determined from what necessarily appears in the plaintiff's statements of his own claim in the bill or declaration....").
 
 
 54
 Unfortunately, in suits against the Federal Government these two notions have not always been kept separate. Failure to prove a claim, it is sometimes said, means that the claimant did not come within the scope of the authorized waiver of sovereign immunity, and thus the forum must have lacked jurisdiction to hear the cause. Some of the cases coming here from the MSPB illustrate the point. These are the cases in which the facts which establish jurisdiction are intertwined with the facts which determine the merits of the cause.
 
 
 55
 For example, in a case in which a petitioner before the MSPB alleges that he has been wrongly terminated from Federal employment, the Government's defense is sometimes that the petitioner voluntarily resigned, in which case there could not be a wrongful removal. The MSPB, after full hearing and upon concluding from the evidence that there was a voluntary resignation, will sometimes dismiss the claim "for lack of jurisdiction." See, e.g., Lamb v. United States Postal Serv., 46 M.S.P.R. 470 (1990); Schumert v. United States Postal Serv., 41 M.S.P.R. 350 (1989). The difficulty with this is that obviously the MSPB had jurisdiction to hear and decide the case. The failure was simply petitioner's inability to establish a key factual element of his cause of action. The MSPB correctly concluded that it could not grant relief on those facts, but it was not for lack of jurisdiction.
 
 
 56
 This mislabelling of the result is not entirely the MSPB's alone. Language in cases decided in this court has not always been consistent with the basic principle discussed above, or with the language of other Federal Circuit cases.[11] In the recent case of Cruz v. Department of Navy, 934 F.2d 1240 (Fed.Cir.1991) (in banc ), there is language to the effect that a failure by the employee to prove that his resignation was voluntary means that the Board never had jurisdiction to hear the case in the first instance: "Here the Board never had jurisdiction.... That Cruz' resignation was not found to be voluntary until November 25, 1988 does not change its voluntary nature at its birth on February 16, 1988. The Board had no jurisdiction at that point and did not acquire jurisdiction thereafter." Id. at 1247.[12]
 
 
 57
 Obviously this cannot be taken literally for all purposes, since the outcome turns on a state of facts that cannot be known until after the Board, and on appeal, this court, has taken jurisdiction and decided them. In Cruz, the question being addressed by the court when it made that statement was whether a pendent claim of discrimination could be decided by the MSPB when the principal issue--whether there was an involuntary removal--had already been decided, both by the MSPB and by this court, against the employee. The court correctly concluded that, absent proof of a cause of action for involuntary removal, there was nothing to which the discrimination claim could append.
 
 
 58
 As Cruz illustrates, the nicety with which the result is characterized does not necessarily affect the correctness of the outcome. However, when determining the agency primarily affected by a decision for purposes of identifying the proper party respondent, correct legal characterization of the result is essential. For such purposes, when we refer to cases involving the "jurisdiction" of the MSPB, we do not include cases the merits of which turn on the existence of a state of facts when those facts happen also to be the factual predicate for jurisdiction. When a nonfrivolous claim for relief has been asserted before the Board, and the outcome is determined by whether the facts support that claim, a decision by the Board that they do not is a failure to prove the claim, not a lack of jurisdiction in the Board. The respondent in such a case is the employing agency, not the MSPB.
 
 
 59
 In the case before us, the Board did not purport to decide the merits of the underlying factual issues, but applying the well-pleaded complaint rule and assuming the facts as alleged, it determined that it lacked subject-matter jurisdiction. The issue we are here to judge is whether the MSPB's jurisdictional call was correct. The MSPB is the proper party respondent. See Amin v. Merit Systems Protection Bd., 951 F.2d 1247, 1251-52 (Fed.Cir.1991). The motion of the DVA to recaption the case is denied.
 
 B. The Jurisdictional Issue
 
 60
 The jurisdictional issue in this case presents a straightforward question of statutory interpretation. The question is whether the filing of an EEOC complaint which alleged discriminatory treatment by the employer in violation of Title VII constitutes 'whistleblowing' within the scope of § 2302(b)(8). Spruill argues that his EEOC claim is a "disclosure of information by an employee ... which the employee ... reasonably believes evidences a violation of any law...." (Title VII) within the meaning of those phrases in § 2302(b)(8), and therefore the MSPB has jurisdiction under the IRA. In contrast, the MSPB argues that the filing of the EEOC claim is "the exercise of any appeal, complaint, or grievance right granted by any law" within the terms of § 2302(b)(9)(A), which section does not carry with it MSPB jurisdiction under the IRA. EEOC complaints must be excluded from § 2302(b)(8), the MSPB argues, for to do otherwise would eviscerate § 2302(b)(9)(A). The text of these two subsections is set out for the reader's convenience in the margin.[13]1.
 
 
 61
 Spruill's argument is that his EEOC complaint, facially coming under § 2302(b)(9)(A), necessarily is based upon allegations of a violation of law, rule, or regulation, thus facially coming under § 2302(b)(8). But this superficial reading does not withstand closer analysis.
 
 
 62
 First, in enacting the CSRA Congress chose in these two subsections to differentiate between reprisal based on disclosure of information and reprisal based upon exercising a right to complain. Only the former--described in § 2302(b)(8)--was termed "whistleblowing" in the debates, although that term was neither employed nor defined in the original statute itself. This understanding of the term was subsequently formalized in the Whistleblower Protection Act of 1989. Congress in the Findings and Purpose section of the Act noted that one of the functions of the CSRA and the OSC was "to protect whistleblowers (those individuals who make disclosures described in such section 2302(b)(8) ) from reprisal." 103 Stat. 16, § 2(a)(3) (codified at 5 U.S.C. § 1201, note (Supp. II 1990) (emphasis added)). See also 135 Cong.Rec. H750 (daily ed. March 21, 1989) (joint explanatory statement of S. 508, reintroduced in support of S. 20).
 
 
 63
 Spruill argues that we should not read too much into this use of two distinct subsections since many of the subsections of § 2302(b) clearly overlap amongst themselves and with provisions of other statutes, and Congress was well aware of this.[14] This argument is not persuasive. Unless Congress makes it evident that one provision is intended to subsume another parallel provision, we construe the statute to give meaning to each part.
 
 
 64
 Second, in crafting the IRA provision of the WPA, Congress clearly intended that it be available to only some victims of reprisal, not all victims. We know this from the express language of § 1221(a) of the IRA, limiting its reach to allegations falling within § 2302(b)(8) and not § 2302(b)(9). And we know it from the title of § 1221 itself--"Individual right of action in certain reprisal cases."
 
 
 65
 This selectivity was intended. The initial House and Senate versions of the WPA extended the IRA to all victims of the prohibited personnel practices listed in §§ 2302(b)(1) through (11). H.R. 25, 100th Cong. 1st Sess. § 1221 (1987); S. 508, 100th Cong. 1st Sess. § 1221 (1987). That broad grant of jurisdiction was later changed to eliminate not only the non-reprisal based prohibited personnel actions, but reprisal stemming from § 2302(b)(9) prohibited actions as well. Testimony of the unwieldiness of the proposed system preceded the amendment.[15] To read the scope of § 2302(b)(8) as including activities squarely within § 2302(b)(9)(A) would have the effect of reversing this carefully considered Congressional decision, see INS v. Cardoza-Fonseca, 480 U.S. 421, 442-43, 107 S.Ct. 1207, 1218-19, 94 L.Ed.2d 434 (1987) (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 392-93, 100 S.Ct. 1723, 1742, 64 L.Ed.2d 354 (1980) (Stewart, J., dissenting)), and would render § 2302(b)(9)(A) largely irrelevant, if not completely superfluous. Horner v. Merit Systems Protection Bd., 815 F.2d 668, 674 (Fed.Cir.1987) (citing Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)). See also Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 837, 108 S.Ct. 2182, 2188-89, 100 L.Ed.2d 836 (1988), Mountain States Tel. & Tel. Co. v. Santa Ana, 472 U.S. 237, 249-50, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) and United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute' ... rather than to emasculate an entire section....").
 
 
 66
 This distinction between the two subsections has been recognized in the case law as well. In In re Frazier, 1 MSPB 159, 1 M.S.P.R. 163 (1979), aff'd sub nom. Frazier v. Merit Systems Protection Bd., 672 F.2d 150 (D.C.Cir.1982), four officials complained to the OSC that they had been transferred in reprisal for whistleblowing and also for the filing of EEOC complaints. The OSC, the MSPB, and the D.C. Circuit all agreed that the disclosures to two Congressmen of general mismanagement, harassment, and discrimination constituted whistleblowing under § 2302(b)(8). On the other hand, the EEOC complaints were treated as falling solely within § 2302(b)(9)(A), despite the phrasing of § 2302(b)(8). 1 M.S.P.R. at 190-92; 672 F.2d at 156.
 
 2.
 
 67
 Spruill argues that since filing EEOC complaints fits within the terms of § 2302(b)(8), we should go no further unless we are convinced that that interpretation leads to "absurd results." See, e.g., Demarest v. Manspeaker, 498 U.S. 184, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) and United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242-43, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). And, he argues, to determine whether a result is "absurd," one must test it against the known intent of Congress regarding that statutory provision. Id. Essentially, then, Spruill argues that we must accept his interpretation unless the legislative history proves a negative--that Congress did not intend for EEOC complaints to be within the plain language of § 2302(b)(8).
 
 
 68
 We find that a crabbed approach. When the CSRA was enacted in 1978, it provided whistleblower protection not only through § 2302(b)(8), but also through the creation of the OSC. This provided protections for whistleblowers for the first time, protections thought necessary to encourage potential whistleblowers to come forward since prior to the CSRA they did so only at their peril. See 133 Cong.Rec. E30 (daily ed. Jan. 7 1987); 133 Cong.Rec. S10640 (daily ed. Aug. 2 1988).
 
 
 69
 At that same time, however, the issue of discrimination was a known and abhorred evil that had long been of concern to Congress. Years before, Congress passed the Civil Rights Act of 1964 to combat discrimination. That Act set up the EEOC, Pub.L. 88-352, Title VII, § 705(a)-(d), (f)-(j), July 2, 1964, 78 Stat. 258, 259 (codified at 42 U.S.C. § 2000e-4 (1988)), and established procedures to encourage the disclosure of discriminatory practices. Upon passage of the CSRA, enforcement and related functions regarding discrimination in Federal employment were placed with the EEOC. Exec. Order No. 12106, 44 F.R. 1053 (1978) (reprinted in 42 U.S.C.A. § 2000e-4, Note 1 (West 1981 & Supp.1992)). This executive action "place[d] the Commission at the center of equal employment opportunity enforcement ... [giving] coherence and direction to the government's efforts by developing strong uniform enforcement standards to apply throughout the government: standardized data collection procedures, joint training programs, programs to ensure the sharing of enforcement related data among agencies, and methods and priorities for complaint and compliance reviews." Reorganization Plan No. 1 of 1978, 43 F.R. 19807, 92 Stat. 378 (message of the President) (reprinted in 42 U.S.C.A. § 2000e-4, note (West 1981 & Supp.1992)). Employees who filed EEOC complaints were protected from reprisal. 42 U.S.C. § 2000e-3(a) (1988); 5 C.F.R. § 1613.261. Thus, when Congress enacted the CSRA with a provision in it to protect whistleblowers, the deficiencies as far as reprisal for discrimination complaints were concerned had already been addressed.
 
 
 70
 Congress' pervasive references to whistleblowers whose disclosures saved Government funds or short-circuited potential health and safety hazards bolster the conclusion that reprisal for filing EEOC complaints falls exclusively within § 2302(b)(9)(A). See, e.g., 135 Cong.Rec. E98 (daily ed. Jan. 4, 1989); 135 Cong.Rec. S2805 (daily ed. March 16, 1989). Such references were even more pointed and pervasive in the legislative history of the 1989 amendment which added the WPA.[16] And that Act itself stated: "Federal employees who make disclosures described in section 2302(b)(8) of title 5, United States Code, serve the public interest by assisting in the elimination of fraud, waste, abuse, and unnecessary Government expenditures." 103 Stat. 16 (codified at 5 U.S.C. § 1201 note (Supp. II 1990)). This is a description of the results of the type of public disclosure generally evoked by the term "whistleblowing," not a description of the results of an individual's complaint about the discriminatory behavior of a particular supervisor.
 
 
 71
 There is good reason for Congress to have structured the act in the manner it did. As the OSC noted in its response to Spruill, investigative and remedial measures are available to Spruill through the EEOC.[17] The OSC policy of avoiding duplication of effort by referring discrimination matters to the EEOC conserves governmental resources and avoids potentially conflicting procedures or outcomes. It acknowledges the EEOC role as an expert agency in discrimination matters, facilitates EEOC consolidation of important statistical data, and provides an efficient division of decisionmaking labor. In short, it promotes efficiency and economy. Our conclusion today reinforces Congress' efforts to provide the MSPB with a workload that is within its resources and to provide the EEOC with a continuing leadership role in the ongoing battle to eradicate discrimination.
 
 CONCLUSION
 
 72
 The DVA motion to reform the caption is denied. The MSPB's dismissal of Spruill's petition for lack of subject-matter jurisdiction is affirmed.
 
 
 73
 No costs.
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 This opinion concerns the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111 et seq. (1978) (codified as amended in scattered sections of 5 U.S.C.) (CSRA) and the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified in scattered sections of 5 U.S.C.) (WPA). Unless otherwise noted, all statutory references are to 5 U.S.C. (1988)
 
 
 [2]
 A note on terminology. What is at issue here is an official action, presumably adverse, taken against an employee, intended to be punishment for some protected act of the employee, such as whistleblowing. This official action is sometimes called 'reprisal,' and sometimes called 'retaliation.' The dictionary meaning of reprisal suggests actions taken to procure redress of grievances, or something given or paid in restitution. Retaliation, on the other hand, connotes repayment in kind, to transgress against a transgressor. Neither term quite describes what is going on. We use reprisal since that is the term used, though not defined, in the Findings and Purpose section of the WPA, see 103 Stat. 16 § 2 (codified at 5 U.S.C. § 1201, note (Supp. II 1990)), and it has fewer letters
 
 
 [3]
 See infra note 13 for the relevant text of § 2302(b)(8)
 
 
 [4]
 See, e.g., 135 Cong.Rec. E70 (daily ed. Jan. 3, 1989); 135 Cong.Rec. S2781 and S2785 (daily ed. March 16, 1989); 134 Cong.Rec. S10639 (daily ed. Aug. 2, 1988); 134 Cong.Rec. S15336 (daily ed. Oct. 7, 1988)
 
 
 [5]
 This includes employees faced with personnel actions, as defined in § 2302(a), which did not have direct MSPB review under § 7701. The personnel action in Spruill's case--a three-day suspension--is "under Chapter 75," § 2302(a)(2)(A)(iii), and would not otherwise receive MSPB review. Section 7503
 
 
 [6]
 Since the creation of the Federal Circuit in 1982, exclusive subject matter jurisdiction has been in this court, § 7703(b)(1), with the exception of "mixed" discrimination cases which arise under § 7702. Section 7703(b)(2)
 
 
 [7]
 Under Hopkins and Peterson, the MSPB was the proper respondent when the issue concerned attorney fees. The statute now specifies that the agency should be the respondent in appeals of a final order or decision on a request for attorney fees
 
 
 [8]
 Whistleblower Protection Act of 1987: Hearings on H.R. 25 Before the Subcomm. on Civil Service of the House Comm. on Post Office and Civil Service, 100th Cong. 1st Sess. (1987), 18-19 (statement of Stuart E. Schiffer, Deputy Assistant Attorney General, Civil Division); Whistleblower Protection Act of 1987: Hearings on S. 508 Before the Subcomm. on Federal Services, Post Office, and Civil Service, of the Senate Comm. on Governmental Affairs, 100th Cong. 1st Sess. (1987), 445-46 (statement of Stuart E. Schiffer, Deputy Assistant Attorney General, Civil Division)
 
 
 [9]
 Hagmeyer, 852 F.2d 531, 533 (Fed.Cir.1988). See S.Rep. No. 969, 95th Cong.2d Sess. 62-63 (1978), indicating that in a case in which the employing agency was the named respondent, the MSPB "has the right to intervene in the proceeding. This will be particularly useful where the appeal raises questions of particular significance to the Board, such as the validity of the procedures followed by the Board in the case."
 
 
 [10]
 The application of the principle of res judicata is just one example. The issue in this case is another
 
 
 [11]
 Compare Lackhouse v. Merit Sys. Protection Bd., 773 F.2d 313, 317 (Fed.Cir.1985) (Board had jurisdiction over appeal alleging an improper employment practice; decided on merits), McClary v. United States, 775 F.2d 280, 283 (Fed.Cir.1985) (Claims Court had jurisdiction over claim for moving expenses under 5 U.S.C. § 5724; decided on merits), and Pawnee v. United States, 830 F.2d 187, 192 n. 7 (Fed.Cir.1987), cert. denied, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988) (dismissal of suit alleging breach of fiduciary duty is on the merits, not for lack of jurisdiction) with Albert v. Kevex Corp., 729 F.2d 757, 760-61, 221 USPQ 202, 205, reh'g granted in part, denied in part, Albert v. Kevex Corp., 741 F.2d 396, 223 USPQ 1 (Fed.Cir.1984) ("infringing patents" suit under 35 U.S.C. § 291 required, as a jurisdictional predicate, proof of actual interfering patents rather than a mere "recitation in a pleading"), Latham v. United States Postal Serv., 909 F.2d 500, 504 (Fed.Cir.1990) (voluntary retirement case dismissed for lack of jurisdiction following a full factual inquiry by the MSPB), and Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed.Cir.1988) (Claims Court's dismissal of complaint as barred by the statute of limitations upheld but remanded for dismissal "for lack of jurisdiction")
 
 
 [12]
 In an attempt to accommodate these incompatible views of jurisdiction, there is a line of Federal Circuit opinions indicating that assertion of a nonfrivolous claim entitles the petitioner to a hearing on whether jurisdiction by the board is proper. See, e.g., Schultz v. United States Navy, 810 F.2d 1133 (Fed.Cir.1987); Dumas v. Merit Sys. Protection Bd., 789 F.2d 892 (Fed.Cir.1986), Burgess v. Merit Sys. Protection Bd., 758 F.2d 641 (Fed.Cir.1985); Stokes v. Fed. Aviation Admin., 761 F.2d 682 (Fed.Cir.1985); Covington v. Dep't of Health and Human Servs., 750 F.2d 937 (Fed.Cir.1984); Manning v. Merit Sys. Protection Bd., 742 F.2d 1424 (Fed.Cir.1984). At such hearings,
 the board's jurisdiction and the merits of an alleged involuntary separation are inextricably intertwined. Dumas v. Merit Systems Protection Board, 789 F.2d 892, 894 (Fed.Cir.1986). Thus, if it is established that a resignation is involuntary, the board not only has jurisdiction, but also the employee wins on the merits and is entitled to reinstatement. See Covington v. Department of Health and Human Services, 750 F.2d 937, 943 (Fed.Cir.1984).
 Schultz, 810 F.2d at 1136. See also Burgess, 758 F.2d at 643.
 
 
 [13]
 [2302] (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--
 (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--
 (A) any disclosure of information by an employee or applicant which the employee of applicant reasonably believes evidences--
 (i) a violation of any law, rule, or regulation, or
 (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,
 if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs....
 (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of--
 (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule or regulation....
 
 
 [14]
 Congress explicitly recognized that § 2302(b) described acts giving rise to causes of action under other statutes. Subsection § 2302(d) specifies that § 2302 "shall not be construed to extinguish or lessen ... any civil right or remedy available ... under [the Civil Rights Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Rehabilitation Act, and any law prohibiting discrimination on the basis of marital status or political affiliation]."
 
 
 [15]
 Whistleblower Protection Act of 1987: Hearings on H.R. 25 Before the Subcomm. on Civil Service of the House Comm. on Post Office and Civil Service, 100th Cong. 1st Sess. (1987), 41-42 (statement of Hon. Mary F. Weisman, Special Counsel); 71-75 (statement of Llewelyn M. Fischer, General Counsel, MSPB); 136-37 (statement of Robert G. Vaughn, Professor, Washington College of Law, American University). Whistleblower Protection Act of 1987: Hearings on S. 508 Before the Subcomm. on Federal Services, Post Office, and Civil Service, of the Senate Comm. on Governmental Affairs, 100th Cong. 1st Sess. (1987), 378-381 (statement of Hon. Mary F. Weisman, Special Counsel); 425-428 (statement of Llewelyn M. Fischer, General Counsel, MSPB)
 
 
 [16]
 In the course of the debates regarding the WPA, several Congressmen referred to a concurrent Pentagon procurement scandal, see, e.g., 134 Cong.Rec. S10638 (daily ed. Aug. 2, 1988); 134 Cong.Rec. S15336 (daily ed. Oct. 7, 1988); 135 Cong.Rec. S279 (daily ed. Jan. 25, 1989); references were legion to "waste and fraud," saving tax dollars, and reducing the deficit. One Congresswoman--one of the primary sponsors of the legislation--quipped "I think the bill is misnamed. It should be the taxpayer protection act...." 135 Cong.Rec. H751 (daily ed. March 21, 1989)
 
 
 [17]
 These measures include investigation of the complaint, 5 C.F.R. § 1613.216, a hearing before an administrative judge, 5 C.F.R. § 1613.218, and review of the record by the EEOC itself, 5 C.F.R. § 1613.231. The EEOC is empowered to order corrective action, 5 C.F.R. § 1613.234, and remedial action including, inter alia, the award of back pay and expunction from agency records of any reference to any unwarranted disciplinary action. 5 C.F.R. § 1613.271. Furthermore, the EEOC framework specifically provides for employees who suffer reprisal for the filing of the EEOC complaint. 5 C.F.R. § 1613.261 explicitly states that such reprisal is unlawful, and 5 C.F.R. § 1613.262 provides that an employee's allegation of reprisal is itself a complaint of discrimination which shall be accorded full EEOC procedure. The allegation of reprisal may be consolidated with the underlying discrimination complaint upon timely request by the employee. Id