NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――――――

**STEVEN A. MCKINNIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

―――――――――――――

2024-1136

―――――――――――――

Petition for review of the Merit Systems Protection Board in No. DA-1221-18-0200-W-1.

―――――――――――――

Decided:  January 22, 2026

―――――――――――――

KATHERINE LEASE, Alan Lescht and Associates, PC, Washington, DC, argued for petitioner.  Also represented by JENNIE CATHRYNE BLAINE WATSON.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

―――――――――――――

Before DYK, LINN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Steven A. McKinnis petitions for review of a Merit Systems Protection Board decision denying corrective action in his whistleblower retaliation claim. We affirm.

I

A

Mr. McKinnis worked as an auditor for the Department of the Interior's Office of Natural Resources Revenue from May 9, 2011, until he was removed on January 19, 2018, for failure to demonstrate acceptable performance after a reasonable opportunity to improve.

Prior to his removal, the agency took several adverse personnel actions against Mr. McKinnis. In July 2016, Mr. McKinnis received a letter of reprimand from his then-supervisor, Adrienne Tomlin, for two instances of failure to provide accurate information—one related to his attempts to use leave under the Family and Medical Leave Act (FMLA) and another related to his attempts to adjust his work-related travel plans. Less than a week later, Mr. McKinnis filed a grievance alleging the agency was violating FMLA and its own travel regulations, and that he received the letter of reprimand as the result of "something personal" or "retaliation." J.A. 104–06. Mr. McKinnis's grievance was denied by John Barder, another management official, on August 29, 2016.

Mr. McKinnis later applied to and was transferred to a different team based out of the same office that was supervised by a different member of management, Kim Potts. Shortly after, the agency launched an investigation into the office's working conditions. It revealed a "toxic and unhealthy work environment," and noted Mr. McKinnis was a "significant contributor[ ]" to creating that environment. J.A. 989–90. The final report also emphasized that

management allowed unhealthy behaviors to manifest and recommended Ms. Potts attend supervisory training on dealing with difficult situations and people. Mr. McKinnis participated in this investigation and submitted a written statement on March 8, 2017, outlining his concerns with management and the office.

On April 7, 2017, Ms. Potts proposed suspending Mr. McKinnis for 14 days based on two charges. First, Ms. Potts alleged that Mr. McKinnis provided inaccurate information to supervisors when he stated he was called by a state auditor about a specific compliance review, when in fact he had been the one to place the call. Second, Ms. Potts alleged that Mr. McKinnis exhibited disrespectful conduct toward a supervisor when, during a conversation regarding approval of his work credit card statement, he interrupted Ms. Potts to state "that's a lie, she is lying." J.A. 154. Mr. McKinnis contested those facts, but he was suspended by the deciding official, Mr. Barder, on May 16, 2017.

On July 6, 2017, Ms. Potts placed Mr. McKinnis on a performance improvement plan (PIP) because his performance fell below a satisfactory level. Mr. McKinnis was not completing or making timely progress on his assigned audits, which in one instance necessitated transferring the assignment to another auditor. When Mr. McKinnis did not sufficiently improve by the end of his review period, Ms. Potts proposed his removal from federal service. Mr. McKinnis did not submit a response to his proposed removal, and a different deciding official, John Mehlhoff, removed Mr. McKinnis effective January 19, 2018.

B

On October 14, 2016, Mr. McKinnis filed the underlying whistleblower retaliation complaint with the Office of Special Counsel (OSC), arguing his letter of reprimand was retaliation for his administrative grievance and general allegations of agency mismanagement through various other reporting mechanisms. Mr. McKinnis periodically

amended his OSC complaint, finally alleging that his letter of reprimand, suspension, PIP, and removal were all the result of retaliation. On January 10, 2018, OSC advised Mr. McKinnis it would not be taking any action in his case; OSC closed the case on January 31, 2018.

On February 16, 2018, Mr. McKinnis filed an individual right of action (IRA) appeal with the MSPB. After a two-day hearing, the administrative judge issued an initial decision denying Mr. McKinnis's request for corrective action. The administrative judge found that several disclosures were protected under the Whistleblower Protection Act as amended in 2012 (WPA), including his grievance and March 2017 written statement, and that they contributed to the personnel actions at issue. But the administrative judge denied corrective action because the agency had successfully proven its affirmative defense, i.e., that it would have taken the same actions notwithstanding Mr. McKinnis's disclosures.

Mr. McKinnis disagreed and petitioned for Board review. In its review, the Board sua sponte re-assessed the protected nature of Mr. McKinnis's asserted disclosures. As relevant here, the Board determined that Mr. McKinnis's grievance was not a protected disclosure under the WPA, and that while his March 2017 written statement was protected, he did not successfully prove it contributed to any of the asserted personnel actions. Because Mr. McKinnis had not proven his case in chief, the Board vacated the administrative judge's findings regarding the agency's affirmative defense. The Board then denied Mr. McKinnis's petition for review and affirmed the administrative judge's denial of corrective action.

Mr. McKinnis timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

Our review of Board decisions is limited. We may only set aside the Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *See Hansen v. Dep't of Homeland Sec.*, 911 F.3d 1362, 1366 (Fed. Cir. 2018).

Mr. McKinnis raises two general arguments on appeal. First, he argues the Board erred when it concluded that his grievance is not a protected disclosure that can support an IRA claim under the WPA. Second, Mr. McKinnis challenges the Board's finding that even though his March 2017 written statement was protected by the WPA, he was not entitled to corrective action because he did not prove it was a contributing factor in his suspension, PIP, or removal. We address each argument in turn.[1]

## A

Mr. McKinnis argues the Board erred when it found that his grievance was not a qualifying protected disclosure under the WPA and thus was outside the Board's jurisdiction to review as part of his IRA appeal. He contends his grievance constitutes either a protected disclosure under section 2302(b)(8) or a protected activity under

---

[1]   Mr. McKinnis also made a third argument: that the agency failed to prove its affirmative defense, i.e., that it would have taken the same adverse personnel actions absent his whistleblowing activity. But because the Board vacated the administrative judge's findings on that question and did not reach the issue during its review, that argument is not properly before us. *See Delalat v. Dep't of Air Force*, 557 F.3d 1342, 1346 (Fed. Cir. 2009).

section 2302(b)(9)(A)(i). We disagree.

The WPA gives federal employees an individual right of action to seek corrective action from the MSPB for personnel actions based on specified prohibited practices, including those outlined in 5 U.S.C. § 2302(b)(8) and 2302(b)(9)(A)(i). *See* 5 U.S.C. § 1221(a). In relevant part, section 2302(b)(8) protects a federal employee's disclosure of government abuse of authority or violation of law, rule, or regulation. And Mr. McKinnis argues his grievance qualifies because it contained disclosures of agency abuse of authority and violations of FMLA and travel regulations. Pet. Br. 27–28 (citing 5 U.S.C. § 2302(b)(8)(A)). But our caselaw is clear: disclosures in grievances, no matter their substance, are protected by section 2302(b)(9) not section 2302(b)(8). *See, e.g.*, *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1576 (Fed. Cir. 1996); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 690–91 (Fed. Cir. 1992). The Board correctly concluded Mr. McKinnis's grievance could not support an IRA appeal under section 2302(b)(8).

Section 2302(b)(9) generally protects against retaliation for exercising a grievance right, but it distinguishes between (i) exercising a grievance right "with regard to remedying a violation of [section 2302(b)(8)]" and (ii) exercising a grievance right regarding anything else. *Compare* 5 U.S.C. § 2302(b)(9)(A)(i), *with* 5 U.S.C. § 2302(b)(9)(A)(ii). Only the former can serve as the basis for an IRA appeal under the WPA—that is, a grievance must pertain to remedying an instance of retaliation for whistleblowing, as described in section 2302(b)(8), for it to support an IRA appeal to the board. *See* 5 U.S.C. §§ 1221(a), 2302(b)(9)(A)(i); *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1329 (Fed. Cir. 2020). Retaliation for filing a grievance pertaining to any other subject is properly addressed by other mechanisms, not an IRA appeal. *See Young*, 961 F.3d at 1329.

On appeal, Mr. McKinnis argues his grievance falls under section 2302(b)(9)(A)(i) because it contains assertions that his letter of reprimand was the result of "retaliation." Pet. Br. 27–28. And while he concedes there is no mention of retaliation *for whistleblowing* in his grievance, he contends that is inconsequential because (1) his grievance was filed pro se, and (2) it is the substance of his grievance, not the label he ascribes to it, that dictates whether it is protected. *Id.* While we agree that it is the substance of the grievance that controls this inquiry, we find that the grievance's vague and singular assertion of "retaliation" does not imply retaliation for *whistleblowing*. Nor could it: the letter of reprimand could not possibly be retaliation for the whistleblowing activities Mr. McKinnis alleges on appeal because he received the letter of reprimand *before* either purported disclosure occurred. Therefore, we affirm the Board's findings that Mr. McKinnis's grievance is protected by section 2302(b)(9)(A)(ii) rather than section 2302(b)(9)(A)(i), and that his grievance therefore cannot serve as the basis for an IRA appeal.

B

Mr. McKinnis also challenges the Board's determination that he is not entitled to corrective action with respect to his March 2017 written statement—which both parties agree is protected—because he did not prove it contributed to any of the personnel actions at issue. We also reject this argument.

To prevail under the WPA, Mr. McKinnis must prove both that he made a protected disclosure and that it was a contributing factor in the agency's personnel actions. *See* 5 U.S.C. § 1221(a), (e)(1). The statute expressly provides that the "contributing factor" element can be proven by circumstantial evidence. 5 U.S.C. § 1221(e)(1). One way to do so is via the knowledge/timing test, which requires evidence that "(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the

personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." *Id.* Mr. McKinnis argues the Board erred when it concluded neither Mr. Barder nor Ms. Potts had knowledge of his protected disclosure, and that, regardless, other circumstantial evidence indicates a connection between his protected disclosure and the agency's actions.

The Board's decision is supported by substantial evidence. Regarding Mr. Barder, the deciding official for Mr. McKinnis's suspension, the administrative judge expressly credited Mr. Barder's testimony that he "did not perceive [Mr. McKinnis] as a whistleblower and was unaware of any protected disclosures [he] may have made." J.A. 29. This credibility finding was undisturbed by the Board in its review, and Mr. McKinnis's single sentence assertion that "Barder was also aware" of his protected disclosure is insufficient to overcome the administrative judge's virtually unreviewable credibility determination on appeal. Pet. Br. 32; *see Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) ("To the extent that the petitioner's claim is based upon a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable . . . .").

Regarding Ms. Potts, the official who placed Mr. McKinnis on a PIP and proposed his suspension and removal, Mr. McKinnis argues it is clear she knew Mr. McKinnis engaged in protected activities because she called Mr. McKinnis a "troublemaker" and referenced him throughout her written statement to the administrative investigator. Pet. Br. 29–32. But the relevant inquiry is not whether Ms. Potts knew Mr. McKinnis engaged in protected activities generally—the relevant inquiry is whether she knew of the specific protected activity at issue here: his March 2017 statement. *See* 5 U.S.C. § 1221(e)(1). None of the statements Mr. McKinnis identifies indicate Ms. Potts

knew of the March 2017 written statement in particular. And the Board's conclusion that she had no knowledge is supported by Ms. Potts's testimony that she never received or saw the report or attached statements and by record evidence that she was not copied on any of the related materials.[2]

The Board also relied on evidence other than knowledge and timing. The Board noted the agency had strong performance-based reasons for suspending Mr. McKinnis, placing him on a PIP, and removing him. At the time Mr. McKinnis was placed on a PIP, his timely completion rate was 0% and improved to only 10% during the PIP period—the Board emphasized that "fail[ing] to achieve minimally successful performance . . . by such a wide margin" supports the agency's actions. J.A. 8–9. And the Board emphasized that any retaliatory motive resulting from Mr. McKinnis's participation in the administrative investigation was likely minimal because there was no indication the investigation resulted in any adverse consequences for any of his supervisors. This is substantial evidence supporting the Board's finding that Mr. McKinnis's March 2017 statement was not a contributing factor to his suspension, PIP, or removal. Mr. McKinnis's argument to the contrary asks us to re-weigh the evidence on appeal, which we decline to do. *See Jones v. Dep't of Health & Hum.*

---

[2] The Board did not err in overturning the administrative judge's finding that Ms. Potts "did not deny" that she was aware Mr. McKinnis participated in the internal investigation. The administrative judge's conclusion was not the result of any demeanor-based credibility determinations, and so the Board was free to re-weigh the evidence and substitute its own decision as to the facts or law, subject to our substantial evidence review. *See* J.A. 30–31; *Haebe v. Dep't of Just.*, 288 F.3d 1288, 1302 (Fed. Cir. 2002).

*Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) ("Under the substantial evidence standard of review, we do not reweigh evidence on appeal." (cleaned up)).

## III

We have considered Mr. McKinnis's other arguments and find them unpersuasive. The decision of the Board is affirmed.

**AFFIRMED**

COSTS

No costs.