SOUTHERN CALIFORNIA FEDERAL SAVINGS & LOAN ASSOCIATION; Socal Holdings, Inc.; Arbur, Inc.; Roy Doumani; Preston Martin; William E. Simon, Jr., J. Peter Simon, George J. Gillespie, III, Executors of the Estate of William E. Simon; and Beverly W. Thrall, Successor to the Claims of Larry B. Thrall, Plaintiffs,

and

Gerald L. Parsky, Proposed Plaintiff Intervenor,

v.

The UNITED STATES of America, Defendant.

No. 93–52C.

United States Court of Federal Claims.

April 25, 2002.

John C. Millian, Gibson, Dunn & Crutcher, Washington, D.C., attorney of record and argued for Proposed Plaintiff Intervenor Gerald L. Parsky.

Jerry Stouck, Spriggs & Hollingsworth, Washington, D.C., attorney of record; Rosemary Stewart argued for Plaintiffs Southern California Federal Savings and Loan Association and SoCal Holdings, Inc. Monica A. Freas and Vivek K. Hatti, of counsel.

David C. Hoffman, Trial Attorney, Commercial Litigation Branch, attorney of record, with whom were Jeanne E. Davidson, Deputy Director, David M. Cohen, Director, and Stuart E. Schiffer, Deputy Assistant Attorney General, Department of Justice, Washington, D.C., for Defendant. Tonia J. Tornatore, Trial Attorney, argued for Defendant. Delfa Castillo, Colleen Conry, and Kenneth M. Dintzer, of counsel.

## *OPINION*

BASKIR, Chief Judge.

This *Winstar*-related case is based on the 1987 acquisition and supervisory conversion of a failing savings and loan, Southern California Savings and Loan Association, located in Beverly Hills, California. Pending before the Court is a Motion to Intervene filed by one of the investor-signatories to the transaction, Gerald L. Parsky. For the reasons set forth below, we deny the motion.

### I. The Transaction

In the 1980's, as an alternative to liquidating a number of troubled thrifts and expending large amounts of the Federal Saving and Loan Insurance Corporation's (FSLIC) limited insurance funds, the Federal Home Loan Bank Board (FHLBB) and the FSLIC solicited prospective purchasers or merger partners who might rescue a number of the deeply troubled institutions. For a more detailed description of the state of the savings and loan industry in this period, see *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (*Winstar IV*), *aff'g,* 64 F.3d 1531 (Fed.Cir. 1995) (*en banc*) (*Winstar III*).

In response to these solicitations, a group of investors, including, among others, the late former U.S. Treasury Secretary William E. Simon, Sr., Arbur, Inc. (an investment company co-owned by Secretary Simon and his children), former Assistant Treasury Secretary Gerald L. Parsky, former Federal Reserve Vice–Chairman and FHLBB Chairman Preston Martin, and California real estate investors Roy Doumani and the late Larry B. Thrall (known collectively as the "Simon Group" or "Investor Plaintiffs"), submitted a bid proposal to acquire the failing Southern California Savings and Loan Association.

The Simon Group proposed to form and personally capitalize a holding company, to be named SoCal Holdings, Inc. (SCH), which would in turn purchase the failing thrift and form a new savings and loan association. Upon Government approval, the new associa-

tion, named Southern California Federal Savings and Loan Association (SoCal) would acquire all of the assets and liabilities of its predecessor. Together, SoCal and its holding company are referred to as the "SoCal" or "Institutional Plaintiffs."

The Government approved the Investors' proposal, and on April 30, 1987, the transaction was completed. It was reflected in a series of documents, including an Assistance Agreement (AA) (signed by SoCal and the FSLIC), a Regulatory Capital Maintenance Agreement (RCMA) (signed by SoCal, each of the Investor Plaintiffs, and the FSLIC), several FHLBB Resolutions, and a FHLBB Forbearance Letter to SoCal.

The Investors infused approximately $5 million into the new holding company to purchase SoCal. Mr. Parsky contributed the largest share of this investment, approximately 29%. They also arranged an additional $35 million in outside investments by Ariadne Financial Services Pty. Ltd. and Memvale Pty. Ltd. (together, the "Ariadne Group"). In exchange for the Simon Group's leadership and financial backing, the FSLIC provided substantial direct financial assistance to SoCal, contributing $217.5 million in cash as a capital credit. Second, the FSLIC permitted SoCal to account for the transaction using the purchase method of accounting, which creates goodwill, and allowed SoCal to amortize that goodwill over 25 years. Third, the Investor Plaintiffs signed a guarantee to infuse up to an additional $5 million into SoCal should it fall below the capital minimum requirements. Again, if FSLIC had invoked that guarantee provision, Mr. Parsky was liable for 29% of this $5 million guarantee.

The Government concedes that it agreed to allow SoCal to count the $217.5 million capital credit towards meeting SoCal's regulatory capital minimum requirements. The Plaintiffs contend that the Government also promised SoCal that it could count the supervisory goodwill towards meeting the regulatory capital requirements as well. The Government denies making that particular promise. This dispute is the subject of pending cross-motions for summary judgment and we do not address it here.

The Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), was enacted on August 9, 1989. Among other changes it made to the statutory and regulatory scheme, FIRREA and its implementing regulations restricted the use of capital credits and supervisory goodwill towards meeting regulatory capital minimum requirements. *Id.; Winstar III,* 64 F.3d at 1538. Accordingly, on August 30, 1989, the FSLIC notified SoCal that it was not in compliance with federal banking regulations. Letter from Sidney C. Mar, OTS Supervisory Agent, to SoCal Board of Directors, dated Aug. 30, 1989, filed Mar. 18, 2002. Thereafter, SoCal had to raise capital from outside investors in four separate rounds of financing. On December 7, 1989, the regulations implementing FIRREA took effect. *See Plaintiffs in Winstar–Related Cases v. United States,* 37 Fed.Cl. 174, 179 (1997) (citing 54 *Fed.Reg.* 46,845 (1989)).

On January 28, 1993, SoCal, its holding company, and Investor Plaintiffs Arbur, Inc., Simon, Doumani, Martin, and Thrall filed a five-count complaint alleging that, by enacting FIRREA, the Government breached an express contract, an implied-in-fact contract, the duty of good faith, as well as committed a "taking" without just compensation, and violated the Plaintiffs' due process rights. These same Plaintiffs later filed an amended complaint on August 2, 1995.

Many other cases were filed containing various allegations similar to those raised in the SoCal complaint. In a test case, *Winstar Corp., et al. v. United States,* No. 90–8C, then-Chief Judge Loren A. Smith of the U.S. Court of Federal Claims held that the transactional documents arising out of the savings and loan acquisition in that case formed a contract between the private Plaintiffs and the Government and that FIRREA breached that contract. *Winstar Corp. v. United States,* 21 Cl.Ct. 112 (1990) (finding an implied-in-fact contract but requesting further briefing on contract issues) (*Winstar I*); 25 Cl.Ct. 541 (1992) (finding contract breached and entering summary judgment on liability) (*Winstar II*). The U.S. Court of Appeals for the Federal Circuit, sitting *en banc,* consoli-

dated *Winstar* with two other similar cases, *Glendale Federal Bank, FSB v. United States,* No. 90–772C, with *Statesman Savings Holding Corp., et al. v. United States,* No. 90–773C, and concurred with Judge Smith's holding in each case, holding that the parties formed an express contract and that the Government breached that contract when it enacted FIRREA. *Winstar III,* 64 F.3d at 1531. The U.S. Supreme Court affirmed that decision. *Winstar IV,* 518 U.S. at 839, 116 S.Ct. 2432. With a few exceptions, the remainder of the 120 cases (including this one) were stayed for several years pending the Supreme Court's resolution of the test cases.

## II. Procedural Background

### A. Mr. Parsky's Initial Complaint

Despite being a member of the Simon Group, a signatory to the RCMA, and the single largest individual SCH shareholder, for unknown reasons Mr. Parsky was not a party to the original 1993 complaint nor was he a party to the Plaintiffs' 1995 amended complaint. Instead, on November 6, 1995, Mr. Parsky filed his own separate complaint containing claims related to three separate savings and loan associations with which he had been involved, Southern California Federal Savings and Loan Association ("SoCal"), Western Federal Savings and Loan Association ("WestFed"), and Honolulu Federal Savings and Loan Association ("HonFed"). *Gerald L. Parsky v. United States,* No. 95–731C.

Coming as it did more than six years after the enactment of FIRREA, and perilously close to the sixth anniversary of the issuance of the Act's implementing regulations, it should not be surprising that this tardy complaint has precipitated statute of limitations litigation.

### B. Government's First Motion to Dismiss

The Government initially sought dismissal of Mr. Parsky's claims, along with certain Plaintiffs in twenty-six other *Winstar*-related cases, under the *Winstar* Omnibus Case Management Order (filed September 18, 1996) as a common issue. Collectively, the

Court addressed the generic issue of the six-year statute of limitations, 28 U.S.C. § 2501 (1994), for all cases. Judge John P. Wiese concluded that the statute of limitations began to run on December 7, 1989, the date the implementing regulations became effective, rather than on August 9, 1989, when FIRREA was enacted. Consequently, he determined that Mr. Parsky's claims, along with twenty-three other Plaintiffs' claims, were filed less than six years after the action accrued. *Winstar–Related Cases,* 37 Fed.Cl. at 182–84.

Following Judge Wiese's decision, as a matter of judicial convenience and to enhance procedural efficiency in the handling of Mr. Parsky's case, his complaint was divided and each separate claim was consolidated with already existing cases involving the three thrifts, pursuant to Rule 42(a). Mr. Parsky's claims concerning WestFed were consolidated with *WestFed Holdings, Inc., et al. v. United States,* No. 92–820C, on February 20, 1998, and those relating to HonFed were consolidated with *Bank of America, FSB, et al. v. United States,* No. 95–660C, on June 3, 1998. Pursuant to a joint motion filed on December 10, 1999, by the SoCal Plaintiffs, the Investor Plaintiffs, Mr. Parsky, and the Government, Mr. Parsky's claims relating to SoCal were consolidated with the instant case, *Southern California Federal Savings and Loan Association, et al. v. United States,* No. 93–52C, on February 9, 2000.

### C. Government's Renewed Motion to Dismiss

After a period of discovery, on July 6, 2001, the Defendant filed a Renewed Motion to Dismiss the Claims of Gerald L. Parsky Pursuant to Statute of Limitations in Case No. 95–731C. Because the Government's renewed motion was based upon the same set of facts and required resolution of the same question that had previously been before Judge Wiese, the Court referred the renewed motion to him. Case 95–731C, however, remained on this Court's docket. As a consequence, Mr. Parsky remained a party to the litigation, and participated fully in the briefing and argument of the pending cross-motions for summary judgment on liability.

#### i. Judge Wiese's Second Decision

In response to the Government's renewed motion, in a document filed on August 20, 2001, Mr. Parsky stated:

> Given that OTS formally classified [SoCal] as a "troubled institution" and took formal action imposing specific operating instructions on the thrift [by OTS letter, dated August 30, 1989] ... and given that [SoCal's] exam response letter of September 27, 1989 acknowledged that these restrictions actually damaged the thrift, *Parsky concedes that his claim accrued by the date of the response letter, and hence more than six years prior to the date Parsky filed suit.*

Opp'n to Renewed Mot. to Dismiss, filed Aug. 20, 2001, at p. 12 (emphasis added).

Accordingly, on December 12, 2001, Judge Wiese issued his decision resolving the statute of limitations question and held that Mr. Parsky's complaint was time-barred by the statute of limitations provided for in 28 U.S.C. § 2501. Order Re–Transferring Mot. to Presiding Judge, filed Dec. 12, 2001. Implicit in this conclusion was the Judge's agreement that regardless of whether the cause accrued on August 30, 1989, the date of the deficiency letter premised on the just-enacted FIRREA, or by September 27, 1989, the date of SoCal's response to the deficiency letter, Mr. Parsky's November 6, 1995, complaint was filed at least one month beyond the statute of limitations. In that same Order, Judge Wiese referred the matter back to this Court for disposition. *Id.*

#### ii. Chief Judge Baskir's Disposition

In opposition to the Government's renewed motion to dismiss, Mr. Parsky argued that because his claims "related-back" to those of the SoCal Plaintiffs, they were timely filed. Mr. Parsky's relation-back argument relied upon a case in which a proposed Plaintiff intervenor was permitted to relate-back for statute of limitations purposes to a timely-filed claim. *See Castle v. United States,* 48 Fed.Cl. 187 (2000). At that time, however, Mr. Parsky was not a Plaintiff or a proposed Plaintiff intervenor in this case, but rather was a party Plaintiff in his own independently filed case. Mr. Parsky noted he was differently situated than the intervenors were in

*Castle,* but argued that that "should not matter." Opp'n to Renewed Mot. to Dismiss, at p. 17, n. 6. Accordingly, in a footnote, Mr. Parsky stated:

> [I]n the event that the Court determines that it is technically necessary for Parsky to intervene in the SoCal suit in order for his claims to relate back, Parsky seeks leave to file the motion to intervene attached hereto as Exhibit B in order to accomplish this procedural task.

*Id.*

Mr. Parsky at that time was not procedurally able to relate back to any other claims— he was the only Plaintiff in his case. We therefore rejected that argument. Further, we indicated that we do not accept motions filed by footnote. On December 14, 2001, we granted the Defendant's renewed motion to dismiss and ordered the Clerk of Court to enter judgment for the Defendant in case number 95–731C, *Gerald L. Parsky v. United States.* Order of Dismissal, filed Dec. 14, 2001. Pursuant to that Order, judgment was entered the same day.

### D. Motion to Amend Judgment and For Reconsideration

Shortly thereafter, on December 28, 2001, Mr. Parsky filed a Motion to Amend the Judgment and for Reconsideration. *See* RCFC 59 and 83.2. Mr. Parsky's motion requested that the Court amend its December 14, 2001, Order of Dismissal to allow him to file a motion to intervene in case number 93–52C. Because the Order of Dismissal did not preclude such a motion, we denied as moot Mr. Parsky's motion to amend the judgment, and further noted that the Clerk of Court had already accepted for filing purposes his motion to intervene. Order, filed Jan. 4, 2002. That motion, now before us, was also filed on December 28, 2001.

Mr. Parsky's motion for reconsideration asserted that the Court either overlooked or misunderstood his initial theory with respect to the statute of limitations. In support of this motion, Mr. Parsky argued that the effect of the Court's procedural consolidation of the two related cases, 93–52C with the later-filed 95–731C, was to merge the two cases

into a single claim. Seeking his "rightful place in the litigation," Mr. Parsky in effect argued that because his claims were "already in" the SoCal suit, they "stand alongside claims filed by the thrift itself, by its holding company, and by other members of the investor group." Thus, Mr. Parsky argued, not only should he have been allowed to argue that his claims related-back to those of the 93–52C Plaintiffs, but he should not be required to file the (pending) separate motion to intervene. Opp'n to Renewed Mot. to Dismiss, at p. 3, 17; Mem. in Supp. of Mot. to Amend J. and for Recons., filed Dec. 27, 2001, at p. 5.

In a published Order, we denied Mr. Parsky's motion for reconsideration. *S. Cal. Fed. Sav. and Loan Assoc. v. United States*, 51 Fed.Cl. 676 (2002) (*Parsky Recons. Order*). Reconsideration is appropriate only to remedy a manifest error of law or a mistake of fact, and the decision to grant such a motion lies within the discretion of the Court. *See Franconia Assocs. v. United States*, 44 Fed.Cl. 315, 316 (1999); *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). We held that because "a consolidation order does not merge two cases into a single claim," Mr. Parsky's case, number 95–731C, remained "a separate case." *Parsky Recons. Order*, 51 Fed.Cl. at 678. As such, there were no other Plaintiffs in his case to whom Mr. Parsky could relate back for the purpose of satisfying the statute of limitations. Accordingly, this Court's Order of Dismissal was not manifestly unjust, but rather required by statute. We denied this motion, as well. *Id.*

#### E. Motion to Intervene

On December 28, 2001, Mr. Parsky filed the pending Motion to Intervene, accompanied by a proposed Complaint–in–Intervention, which we discuss and reject below. *See* RCFC 24.

### III. Discussion

Mr. Parsky's intervention motion is very similar to a motion to intervene filed earlier in this same case by the Ariadne Group. As former shareholders and Simon Group financiers, the Ariadne Group moved to intervene and have their proposed Complaint–in–Intervention relate back for statute of limitations purposes to the Plaintiffs' complaint. Prior to filing their motion to intervene, much like Mr. Parsky did, the Ariadne Group had also filed their own, separate case relating to the SoCal transaction with the Government.

While Mr. Parsky survived the Government's first motion to dismiss upon statute of limitations grounds, the Ariadne Group did not. The Ariadne Group's complaint was filed on April 16, 1996, approximately six years and four months after the December 7, 1989, date on which Judge Wiese determined that FIRREA-based claims accrued. Thus, in his common issue decision, Judge Wiese dismissed their case as time-barred. *Winstar–Related Cases*, 37 Fed.Cl. at 182–84 (*Ariadne I*). The U.S. Court of Appeals for the Federal Circuit upheld that dismissal. *Ariadne Fin. Serv. Pty., Ltd. v. United States*, 133 F.3d 874 (Fed.Cir.1998), *cert. denied*, 525 U.S. 823, 119 S.Ct. 67, 142 L.Ed.2d 53 (1998) (*Ariadne II*).

The Ariadne Group then filed a motion to intervene in this case. In a bench ruling confirmed in a brief order, we held that a dismissal upon statute of limitations grounds in the U.S. Court of Federal Claims is a final judgment on the merits, and thus the doctrine of *res judicata* barred their intervention. *S. Cal. Fed. Sav. and Loan Assoc. v. United States*, 51 Fed.Cl. 114 (2001) (*Ariadne III*). We further held that the Ariadne Group's motion to intervene was itself filed outside the six-year statute of limitations, and that their claims did not relate back to those of the original Plaintiffs. Accordingly, we denied their motion to intervene. *Id.*

These reasons apply with equal force to Mr. Parsky's motion, but because he has questioned our holding in *Ariadne III*, we discuss our reasoning in more detail below.

#### A. Motion to Intervene

RCFC Rule 24, which establishes intervention requirements, distinguishes between intervention of right and permissive intervention. Intervention of right is mandated when the applicant files a timely motion to inter-

vene and demonstrates a legally protected interest in the action. The applicant must further show that the action will impair or impede that interest and that no party to the action can be an adequate representative of the applicant's interests. *Am. Mar. Transp., Inc. v. United States,* 870 F.2d 1559, 1560 (Fed.Cir.1989). Permissive intervention, other than the timeliness and "commonality" requirements, is within the discretion of the Court. *EEOC v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1045–46 (D.C.Cir.1998). In exercising that discretion, Rule 24(b) states that the Court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

In support of his assertion that his application to intervene is timely, and recognizing that Rule 24 contains no relation-back mechanism, Mr. Parsky argues that he is the Rule 17 real party in interest with respect to the transaction, events, and claims at issue in this litigation. Thus, Mr. Parsky asserts that he should be allowed to join the case and have his Complaint–in–Intervention deemed filed on the same date as that of the original Plaintiffs. Mr. Parsky further argues that intervention is appropriate and timely at this stage in the litigation because he and the Government for years have *"been litigating* Parsky's claims up until now" in his recently dismissed individual case and thus intervention will not be prejudicial to the Defendant. Reply Mem. in Supp. of Gerald L. Parsky's Mot. to Intervene, filed Feb. 20, 2002, at p. 13 (emphasis in the original).

While the other Investor Plaintiffs take no position on Mr. Parsky's motion, the SoCal Plaintiffs and the Government counter they will suffer prejudice if he is permitted to join the lawsuit at this time—approximately forty-five days before a trial on damages is scheduled to commence.

The question of the motion's timeliness under Rule 24 is a threshold requirement and is committed to the discretion of the trial court. *See Belton Indus., Inc. v. United States,* 6 F.3d 756, 762 (Fed.Cir.1993) (citing *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.,* 69 C.C.P.A. 75, 669 F.2d 703, 707 (1982) and discussing three factors for con-

sidering the timeliness of a motion to intervene). Whether or not the motion is itself timely, however, is distinct from, and secondary to, the more fundamental question of whether the proposed Complaint–in–Intervention satisfies the Court's stringent six-year statutory requirement. The SoCal Plaintiffs and the Government argue that the proposed Complaint–in–Intervention does not satisfy the statute of limitations.

In opposition to Mr. Parsky's motion, the SoCal Plaintiffs and the Government cite to this Court's *Ariadne III* opinion. 51 Fed.Cl. at 114–15. They also argue that the December 14, 2001, Order of Dismissal in Mr. Parsky's original case, 95–731C, is a final judgment on the merits and thus he should be precluded from joining this case. The SoCal Plaintiffs and the Government assert that even if Mr. Parsky can demonstrate a legally protected interest in this action, the doctrine of *res judicata* precludes bringing his claim as a Complaint–in–Intervention. *See* RCFC 8(c).

## B. *Res Judicata*

■ The doctrine of *res judicata,* also known as claim preclusion, is a judicially created rule designed to achieve finality. It was "conceived in light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy." *Reed v. Allen,* 286 U.S. 191, 198–99, 52 S.Ct. 532, 76 L.Ed. 1054 (1932). The doctrine conserves resources, fosters reliance upon judicial decisions, and protects people from vexatious, needless, and endless litigation. *See F. Lee Bailey v. United States,* 46 Fed. Cl. 187, 203 (2000).

Indeed, over a century ago, the Supreme Court stated that *res judicata* was the raison d'etre of the judicial function:

[The] general rule [of *res judicata*] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of

person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals, in respect of all matters properly put in issue and actually determined by them.

*S. Pac. R.R. Co. v. United States,* 168 U.S. 1, 49, 18 S.Ct. 18, 42 L.Ed. 355 (1897).

■ In fact, the Supreme Court has gone to "great lengths in keeping this canon of law constant, even to the expense of individual hardship which might have otherwise been deemed worthy of relief." *Lyons v. United States,* 45 Fed.Cl. 399, 402 (1999) (citing *Reed,* 286 U.S. at 199, 52 S.Ct. 532). Under the doctrine of *res judicata,* "a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

■ A conclusion that *res judicata* applies requires a Court to determine that:

1) The Court's prior decision was a valid and final judgment;

2) the present suit before the Court involves the same claim or cause of action as in the prior decision;

3) the same parties are involved in both cases; and

4) the prior decision was made on the merits of the case.

*See Lyons,* 45 Fed.Cl. at 403.

In addition, the Supreme Court has attached significant importance to making certain that the party barred from bringing its claim by *res judicata* has had a "full and fair opportunity to [previously] litigate" the claim. *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

We will briefly mention the first three criteria before analyzing the fourth factor at length below. The Supreme Court's caution is more than satisfied in this instance.

First, the decision issued by this Court on December 14, 2001, based upon Judge Wiese's December 12, 2001, Order finding that Mr. Parsky's case 95–731C was filed beyond the statute of limitations, and this Court's own independent endorsement of that conclusion, constitute a valid and final judgment. This is not contested.

Second, both the former and current actions are founded upon the same cause of action. The Federal Circuit has adopted the "transactional" analysis for determining if the two claims are the same. *See Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 478–79 (Fed. Cir.1991) (citing *Restatement (Second) of Judgments,* § 24). In the transactional analysis, "a 'claim' rests on a particular factual transaction or series thereof on which a suit is brought." *Id.* Both Mr. Parsky's first case and his proposed Complaint–in–Intervention recite facts arising out of the transaction surrounding the Simon Group's 1987 acquisition of SoCal. In fact, the two complaints are identical. Thus, the second case is the same as the first. This also is not disputed.

Third, the movant here, Mr. Parsky, and the Government were parties in the earlier case. *See Gerald L. Parsky v. United States,* No. 95–731C.

■ The decisive question is whether a dismissal on statute of limitations grounds constitutes an adjudication on the merits. The SoCal Plaintiffs argue that such a dismissal is an adjudication on the merits of the entire cause of action. The Government, meanwhile, asserts that the Order of Dismissal constitutes an adjudication on the merits at least as to the statute of limitations itself; that is, the issue of whether this Court may entertain this motion to intervene. In either case, both agree that *res judicata* acts as an absolute bar to Mr. Parsky's proposed Complaint–in–Intervention.

In reply, Mr. Parsky argues that the express language of Rule 41(b) states that a dismissal for lack of jurisdiction does not operate as an adjudication on the merits. *See* Reply Mem., at p. 6. The rule states:

Rule 41. Dismissal of Actions.

... (b) Involuntary Dismissal: Effect Thereof.

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal of any action or any claim. Unless the

court in its order for dismissal otherwise specifies, *a dismissal* under subdivision (b) of this rule and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction,* or for failure to join a party under Rule 19, *operates as an adjudication on the merits.*

RCFC 41(b) (emphasis added).

Mr. Parsky argues that since the statute of limitations is jurisdictional in this Court, the language "other than a dismissal for lack of jurisdiction" specifically exempts dismissals for failure to satisfy 28 U.S.C. § 2501, from being an "adjudication on the merits."

To support this syllogism, Mr. Parsky cites the Federal Circuit's opinion in another *Winstar*-related case, *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304 (Fed. Cir.2000). In that case, the Federal Circuit stated:

> In the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1). See Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576–77 (Fed.Cir.1988). The complaint in this case was not filed within six years of the accrual of the claims asserted, and that period has not been tolled. Accordingly, the Court of Federal Claims had no jurisdiction to entertain the complaint, and properly dismissed it for lack of jurisdiction.

*Caguas,* 215 F.3d at 1310 (emphasis added).

While the repeated reference to "jurisdiction" in the *Caguas* decision seems to support Mr. Parsky's argument that a dismissal on statute of limitations grounds is jurisdictional, and by virtue of Rule 41(b) not on the merits, his thesis is premised upon an imprecise use of the word "jurisdiction."

The accurate understanding of the "jurisdictional" nature of the statute of limitations in the Court of Federal Claims requires that we go back to the fundamentals of the Court's authority. We may only hear suits against the Government and then only to the extent that Congress has by statute waived sovereign immunity. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85

L.Ed. 1058 ("The United States, as sovereign, is immune from suit save as it consents to be sued."). The Tucker Act, embodied in 28 U.S.C. § 1491 (1994), provides a waiver of sovereign immunity in the Court of Federal Claims for non-tort suits against the United States founded upon the Constitution, a statute or regulation, or an express or implied contract with the United States. *See United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). We thus commonly state that our "jurisdiction" is dependent on that waiver.

The requirement that the suit be "filed within six years after such claim first accrues," 28 U.S.C. § 2501, is a "condition" of the waiver of sovereign immunity which "must be strictly observed." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Accordingly, when we say that our statute of limitations is "jurisdictional," what we mean is that it is an essential element that a Plaintiff must satisfy in order to come within the Tucker Act waiver of sovereign immunity.

Notwithstanding its listing in Rule 8(c) as an affirmative defense, in our Court, where the United States is the only Defendant, the statute of limitations may be raised by the Defendant or *sua sponte* by the Court, and at any time. The statute of limitations provides " 'an express limitation on the Tucker Act's waiver of sovereign immunity,' and consequently may not be waived by either the Court of Federal Claims or the parties." *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998) (quoting *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990)).

In a case we cited in our *Ariadne III Order,* 51 Fed.Cl. at 115, the Federal Circuit discussed the confusion generated by use of the term "jurisdiction:"

> "Jurisdiction" is a term that is one of the most slippery in the legal lexicon. It takes on different connotations depending upon the context. When we speak here of an issue involving the "jurisdiction" of the [administrative forum in this case, the Merit Systems Protection Board (MSPB) ], we are referring to the power of the MSPB to hear and decide a case—subject

matter jurisdiction. *See, e.g., Stokes v. Federal Aviation Admin.*, 761 F.2d 682, 685 (Fed.Cir.1985) ("Jurisdiction means the right or power of a tribunal to act."). *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir.1992) (emphasis added).

The Court also explained the different meanings of the word "jurisdiction:"

> Sometimes the question of subject matter jurisdiction gets confused with the question of entitlement to relief, that is, whether a cause of action has been stated in the complaint, or later proved. For purposes of this discussion, precision requires that the distinction between these ideas be clearly drawn. In response to plaintiff's complaint, defendant may argue that the plaintiff's chosen forum lacks jurisdiction over the subject matter. (This may be raised, for example, by motion under Fed. R. Civ. Proc. 12(b)(1)). A decision by the forum that the facts as alleged do not fall within its subject matter jurisdiction is properly characterized as a dismissal for want of jurisdiction.
>
> Defendant may also argue that the complaint's factual allegations fail to state a claim upon which relief can be granted, and again this may be raised by motion. Fed. R. Civ. Proc. 12(b)(6). Assuming that jurisdiction has not been challenged, or if challenged, jurisdiction has been found to exist on the basis of well-pleaded allegations in the complaint, a decision by the forum that the complaint fails to state a claim upon which relief can be granted is a decision on the merits of the pleaded cause. By like token, if plaintiff's later proofs fail with regard to an essential factual allegation, a decision against the plaintiff is a decision on the merits.

*Id.*

The Federal Circuit discussed the legal consequences which flow from the various uses of the term:

> Confusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction. While the practical result of a dismissal for want of jurisdiction may in some cases be the same as a

dismissal for failure to state a claim, the legal consequences [such as the application of *res judicata*] can be substantially different.

*Id.* at 687.

The *Spruill* Court then explained the different uses of the word "jurisdiction" in the context of litigating against the Federal Government and how those uses impact litigants. The Court specifically stated that a failure to satisfy the statute of limitations is not simply a matter of jurisdiction in the sense of choice of forum and the like, but rather a failure to state a claim.

The Court continued:

> To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect. *It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted.*

*Id.* (emphasis added).

Finally, the Court also noted the less-than-clear Federal Circuit jurisprudence on this issue, stating:

> *Unfortunately, in suits against the Federal Government, these two notions have not always been kept separate.* Failure to prove a claim, it sometimes said, means that the claimant did not come within the scope of the authorized waiver of sovereign immunity, and thus the forum must have lacked jurisdiction to hear the case.... Language in cases decided in this court has not always been consistent with the basic principle discussed above, or with language of other Federal Circuit cases.

*Id.* at 688 (emphasis added).

The Court went on to mention in a footnote some of the cases it had in mind, noting its own "mislabelling" in *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573 (Fed.Cir.1988). *Id.* at 688, n. 11. *Hop-*

*land Band* is the very case that the Federal Circuit later cited in the *Caguas* decision. And *Caguas*, of course, is one of the principal cases Mr. Parsky relies upon in support of the timeliness of his motion to intervene.

The *Spruill* Court also clarified an earlier Federal Circuit opinion it issued on this same subject that the SoCal Plaintiffs cite in reply to Mr. Parsky's Rule 41(b) argument, *Do–Well Mach. Shop, Inc. v. United States,* 870 F.2d 637 (Fed.Cir.1989). The Court noted that in *Do–Well,* the Federal Circuit held that a time bar defense "was not a matter of jurisdiction," but rather "was a question of failure to state a claim for which relief could be granted." *Spruill,* 978 F.2d at 687.

The *Caguas, Do–Well,* and *Hopland Band* opinions are not the only examples of an imprecise use of the term "jurisdiction." Opinions in the Court of Federal Claims also regularly refer to the statute of limitations factor as "jurisdictional." In fact, in another *Winstar*-related case before the undersigned judge, we violated the *Spruill* Court's rule and even cited the *Hopland Band* case as support for a 28 U.S.C. § 2501 statute of limitations dismissal. *See Admiral Financial Corp. v. United States,* 51 Fed.Cl. 366, 368 (2002).

The language in *Spruill* is not at all unclear. Neither, we might add, is the language in the Supreme Court's recent decision in *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), another case we cited in our decision denying Ariadne's motion to intervene. *Ariadne III,* 51 Fed.Cl. at 115. Holding unconstitutional and striking down a Congressional provision that "retroactively command[ed] federal courts to reopen final judgments," the Supreme Court rejected, in advance, Mr. Parsky's Rule 41 argument. The Court stated:

> The rules of finality, both statutory and judge made, *treat a dismissal on statute-of-limitations grounds* the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: *as a judgment on the merits. See, e.g.,* Fed. Rule Civ. Proc. 41(b).

*Plaut,* 514 U.S. at 228, 115 S.Ct. 1447 (emphasis added).

Both Mr. Parsky and the SoCal Plaintiffs have cited Rule 41(b) as support for opposite propositions. We are reassured that the Supreme Court reads the provision as we do. Mr. Parsky has failed to address the *Plaut* case in either his initial Memorandum or in his Reply Memorandum in Support of his Motion to Intervene.

One case Mr. Parsky does cite, however, states that a "dismissal for lack of subject matter jurisdiction is not an adjudication on the merits, and hence has no *res judicata* effect." *St. Pierre v. Dyer,* 208 F.3d 394, 400 (2nd Cir.2000). However, the issue here is not subject matter jurisdiction, but rather necessary elements of a claim against the Government. *See Ariadne II,* 133 F.3d at 878 ("The Court of Federal Claims has subject matter jurisdiction to adjudicate cases arising under the Tucker Act regardless of the timeliness of Ariadne's actions."). In citing to *St. Pierre,* Mr. Parsky, in the words of the Federal Circuit, "obscure[s] the nature of the defect" of his proposed Complaint–in–Intervention. *Spruill,* 978 F.2d at 687. This Second Circuit case is inapposite.

As my colleague Senior Judge Thomas J. Lydon stated after reviewing this exact question: "[i]t appears settled that a statute of limitations dismissal should be construed as a final 'judgment on the merits.'" *Martin v. United States,* 30 Fed.Cl. 542, 548 (1994), *aff'd,* 41 F.3d 1519 (Fed.Cir.1994, table). We share his belief that this question is settled.

\*      \*      \*      \*      \*      \*

■ This is the fifth time that a judge on this Court has considered the question of whether Mr. Parsky may properly pursue his claims related to the SoCal transaction. It cannot be said that Mr. Parsky has not had more than a full and fair opportunity to litigate the timeliness of his claims against the Government.

Because we find that a final judgment on the merits was entered in a prior case, *Gerald L. Parsky v. United States,* No. 95–731C (Fed.Cl.1995), involving the same claim between the same parties as are present in this case in intervention, all four elements of the claim preclusion analysis have been met. Accordingly, the time-honored doctrine of *res*

*judicata* precludes this Court from granting the pending Motion to Intervene and allowing Mr. Parsky to proceed with his proposed Complaint–in–Intervention. This holding is "justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered." *Astoria Fed. Sav. and Loan Assoc. v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

## C. Statute of Limitations and "Relation Back"

On that note, we should be finished. However, Mr. Parsky has another argument that he has raised before—and we have rejected before. Since Mr. Parsky is obviously unreconciled to our previous rejections, *Ariadne III,* 51 Fed.Cl. at 114–16; *Parsky Recons. Order,* 51 Fed.Cl. at 676–79, we shall discuss our reasoning in more detail.

■ Mr. Parsky's motion to intervene, filed approximately twelve years after FIRREA's enactment, is not timely. 28 U.S.C. § 2501; *Ariadne III,* 51 Fed.Cl. at 114, 115. Therefore, in order for him to satisfy both the Rule 24 intervention timeliness requirement and our strict statute of limitations, he must somehow piggyback the timely complaint of the other Plaintiffs; in other words, his proposed Complaint–in–Intervention must "relate back" in time. Contending he is the real party in interest in this litigation, he invokes Rule 17.

Interestingly, however, despite having explicitly grounded the timeliness of his Motion to Intervene upon Rule 17, nowhere in his brief does Mr. Parsky address the central Rule 17 requirement—whether or not he is actually the real party in interest. In fact, Mr. Parsky does not discuss the terms of Rule 17 at all; the Rule is not listed in his Table of Authorities. *See* Mem. in Supp. of Gerald L. Parsky's Mot. to Intervene, filed Dec. 28, 2001. Instead, Mr. Parsky simply asserts that because he, too, was a member of the Simon Group, his late-filed Complaint–in–Intervention should "relate back" to the Plaintiffs' timely-filed complaint.

In support of this assertion, Mr. Parsky attempts to import Rule 15 concepts and principles. Rule 15 is, of course, concerned with amendments to complaints by existing Plaintiffs, and has explicit "relation back" provisions. The rule is quite distinct from Rule 17 and motions to intervene. Because Mr. Parsky cites several Rule 15 cases, it is helpful to restate the relevant portions of the rule that permit amending pleadings:

> Rule 15. Amended and Supplemental Pleadings.
>
> (a) Amendments. *A party may amend the party's own pleading once as a matter of course* at any time before a response is serve or, if the response is one to which no further pleading is permitted and the action has not been scheduled for trial, the *party may so amend it at any time within 20 days after it is served.* Otherwise a party may amend the party's own pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

RCFC 15(a) (emphasis added).

In the event that the Rule 15(a) amended complaint comes after the expiration of the statute of limitations, subsection (c) provides a mechanism for "relating-back" the amended pleading to the date of the original, timely-filed complaint.

> (c) Relation Back of Amendments. Whenever the claim or defense asserted *in the amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

RCFC 15(c) (emphasis added).

Mr. Parsky primarily relies upon *Baldwin Park Cmty. Hosp. v. United States,* 231 Ct. Cl. 1011, 1982 WL 25837 (1982), and a number of other cases considering Rule 15 amendments that seek to add Plaintiffs after the statute of limitations has run. They offer no support to Mr. Parsky's motion.

In *Baldwin Park,* the Plaintiffs had amended, by right, their original, timely filed complaint to add thirty-six additional Plaintiffs. *Id.* The Defendant then moved to dismiss the new Plaintiffs as untimely. The Court relied upon a predecessor rule with language identical to current Rule 15. Find-

ing that the amended complaint related back to the date of the original pleading because the "amended pleading relates to the same conduct, transaction, occurrence set forth in the original pleading," the Court permitted the additional Plaintiffs to remain in the lawsuit. *Id.* at 1012. The Court also noted that the thirty-six additional Plaintiffs "were operated and owned, either directly or through subsidiary corporations, by [one of the] Plaintiff [hospital corporations], or by a company to which [the Plaintiff] is the legal successor in interest." *Id.*

Mr. Parsky also cites *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 372 F.2d 951 (1967), a case cited by the *Baldwin Park* Court. The Snoqualmie Tribe also wanted to amend their timely-filed complaint to add a new party, the Skykomish Tribe, and relate the amended complaint back to their original complaint for statute of limitations purposes. *Id.* at 574, 372 F.2d 951. The Court determined that the Skykomish Tribe was either a "subgroup" of the Snoqualmie Tribe at the time their claim accrued, or that the tribes had "merged ... thereafter through intermarriage." *Id.* Accordingly, the Court upheld an Indian Claims Commission ruling allowing the Snoqualmie to add the Skykomish to their complaint and relate the amended complaint back to the original complaint. It found that the Snoqualmie Tribe is "the only claimant; it is simply an entity serving in two representative capacities." *Id.* at 588, 372 F.2d 951.

Finally, Mr. Parsky cites *Hatter v. United States*, 38 Fed.Cl. 166 (1997) (*Hatter VI*), *rev'd on other grounds*, 203 F.3d 795 (Fed. Cir.2000) (*Hatter VIII*), *aff'd. in part, rev'd in part on other grounds*, 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001) (*Hatter IX*). *Hatter* is a case brought in 1989 by several federal district and circuit judges concerning the alleged unconstitutional diminution in their compensation as a result of mandatory Social Security and Old Age Survivors and Disability Insurance taxes. *Hatter VI*, 38 Fed.Cl. at 167–69. In June, 1992, and December, 1992, the Plaintiffs filed amended complaints containing additional federal judges as Plaintiffs, each precluded (much like Mr. Parsky) from filing his or her

own individual lawsuit because of the passage of time. *Id.*

Citing *Baldwin Park* and *Snoqualmie Tribe*, the Court concluded in the damages phase of the litigation, that the Rule 15—

> "*identity of interests*" *requirement depends on representational relationships among the original and newly proposed parties*, not on merely being similarly situated with respect to the claim in the original pleading.

*Id.* at 178 (emphasis added).

Consequently, the Court denied relation back because—

> there is no formal connection or representational relationship among the original and the later-filing judges ... each judge is suing individually for diminution of his personal compensation.

*Id.* at 179.

The Court concluded, quite pointedly, that:

> [i]t would be anomalous if the later-filing judges in this civil action were deemed timely by application of the relation-back rule when other judges who filed a separate suit on the same day alleging an identical cause of action for diminution would be deemed untimely.

*Id.*

The similarities between Mr. Parsky's circumstances and that of the "later-filing" judges in *Hatter* are evident.

Ignoring the *Hatter* analysis, Mr. Parsky urges us to adopt the Rule 15(c) language as the relevant test in deciding a "real party in interest" motion brought under Rule 17. The latter rule, however, does not contain the "same conduct, transaction, or occurrence" language found in Rule 15, and is concerned with a different situation. Rule 17, in pertinent part, states:

> Rule 17. Parties Plaintiff and Defendant; Capacity.
>
> (a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized

by statute may sue in that person's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

RCFC 17(a).

Rule 17 provides that a "real party in interest" should be permitted to join a lawsuit "when the real party in interest seeks to displace the original, timely Plaintiff, which is suing in a derivative capacity." *Admiral*, 51 Fed.Cl. at 369. Because joinder or substitution has the "same effect if the action had [originally] been commenced in the name of the real party in interest," the new Plaintiff is automatically considered to have filed on time. In other words, unlike Rule 15, Rule 17 does not involve the second test for "relation-back." The real party in interest simply steps into the shoes of the timely filed Plaintiff and thus is deemed timely.

The purpose of Rule 17 is merely to ensure that the "parties to [an] action meet the necessary criteria to warrant them invoking the judicial process." Jack H. Friedenthal, et al., *Civil Procedure* § 6.3 (3d ed.1999). Rule 17—

insists that the named plaintiff possess, under the governing substantive law, the right sought to be enforced. It does not speak to what parties must be joined to the action; it merely ensures that those present are proper parties.

*Id.* at 328.

Individuals who commonly may sue on behalf of a real party in interest include executors, administrators, guardians, trustees, and bailees. One typical example of a real party in interest dispute occurs when an insurance company seeks to join a lawsuit filed by its insured. For example, in *Cummings v. United States*, the Court granted a late-filed Rule 24 motion to intervene and allowed the intervenor insurance company, a Rule 17 real

party in interest, to relate back to the timely filed complaint. 704 F.2d 437, 439 (9th Cir. 1983) (noting that "[b]ecause the insurance company as subrogee stands in the shoes of the insured, it is the real party in interest in the insured's suit to the extent of the subrogation.").

At oral argument, counsel argued that Mr. Parsky is the Rule 17 real party in interest with respect to the thrift's claims. We do not agree. SoCal and its holding company were signatories to an agreement with the Government. At least with respect to one of the promises contained therein, the Government admits to forming a contract with SoCal and to breaching that contract. Accordingly, SoCal and SCH are "proper parties" to this suit in their own right.

Mr. Parsky, as a member of the Simon Group, an investor in SCH, and a signatory to the Regulatory Capital Maintenance Agreement, is not the real party in interest in this litigation vis-a-vis the thrift or its holding company. Rather, like the other investor-signatories, and like the late-filing judges in *Hatter*, he is a party with his own claims who possessed an independent ability to sue in his own right. *See Hatter VI*, 38 Fed.Cl. at 179. That ability expired once the six-year statute of limitations expired. This is always the price paid by a time-barred litigant. *But see Bank of America, FSB v. United States*, 51 Fed.Cl. 500 (2002).

Mr. Parsky also argued that he shares a Rule 15 identity of interest with the other members of the Simon Group. But pending before the Court is Mr. Parsky's motion to intervene as a Rule 17 real party in interest and not a motion under Rule 15 to amend the existing complaint. Recognizing this procedural conundrum, during oral argument counsel for one of the Investor Plaintiffs orally moved to amend the Plaintiffs' complaint (which has already been amended once) to add Mr. Parsky. Neither the Court nor the other parties were presented with a written amendment to the complaint. We therefore declined to entertain the Investor Plaintiffs' impromptu offer. To date, no such written motion has been filed, and such a

motion would itself most certainly be problematic.

Finally, Mr. Parsky argues that he should be permitted to intervene here, notwithstanding the passage of time, because the Defendant will "suffer no undue prejudice," having been "on notice" of Mr. Parsky's role as "central member of the Simon Group" and his interests in this litigation at least since its inception in 1993. Mem. in Supp. of Mot. to Intervene, at p. 15, 18. In support of his contention that notice is central to the question of whether intervention is appropriate here, Mr. Parsky cites again to *Snoqualmie Tribe*, 178 Ct.Cl. at 587, 372 F.2d 951 ("[T]he inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.").

Here again, Mr. Parsky attempts to import a Rule 15 concept into his Rule 24 Motion to Intervene. The statute of limitations period provided for in 28 U.S.C. § 2501, is a strict six years. While notice may be a factor in some courts, in the Court of Federal Claims neither notice nor considerations of prejudice can create or enlarge the waiver of sovereign immunity. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (the Supreme Court stated that "we should not take it upon ourselves to extend the waiver beyond that which Congress intended.").

Consequently, we find that Mr. Parsky's proposed Complaint–in–Intervention does not relate back to the Plaintiffs' timely filed complaint.

## IV. Conclusion

This Court has now considered and rejected Mr. Parsky's efforts to participate in this litigation founded on motions involving Rules 8, 12, 15, 17, 24, 41, 42, 59, and 83. In short, Mr. Parsky's failure is not for counsel's lack of skilled and persistent advocacy. While we will resist the temptation to dismiss Mr. Parsky's latest effort in the same words the Lord Protector dismissed the Rump Parliament in 1653, we believe that he certainly has had his day in this Court.

For the foregoing reasons, **we DENY proposed Plaintiff intervenor Gerald L. Parsky's Motion to Intervene.** The Clerk of Court is directed to return to Mr. Parsky the original of his proposed Complaint–in–Intervention. Each party to bear its own costs.

**IT IS SO ORDERED.**